**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

X : Case No.

13 cv 8369

SYLVIA PRITIKA, Derivatively on Behalf
of AVON PRODUCTS, INC.,

              Plaintiff,

   v.

ANN S. MOORE, PAULA STERN,
MARIA ELENA LAGOMASINO, W. DON
CORNWELL, GARY M. RODKIN, V.
ANN HAILEY, ANDREA JUNG, SUSAN.
J. KROPF, CHARLES W. CRAMB,
BENNETT R. GALLINA, FRED HASSAN,
STANLEY C. GAULT, EDWARD T.
FOGARTY, LAWRENCE A. WEINBACH,
and PAUL S. PRESSLER,

              Defendants,

   -and-

AVON PRODUCTS, INC., a New York
corporation,

            Nominal Defendant.

X

**VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT FOR BREACH OF
FIDUCIARY DUTY, WASTE OF
CORPORATE ASSETS, AND UNJUST
ENRICHMENT**



RECEIVED
NOV 2 2 2013
U.S.D.C. S.D. N.Y.
CASHIERS

**DEMAND FOR JURY TRIAL**

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by plaintiff on behalf of nominal defendant Avon Products, Inc. ("Avon" or the "Company")  against certain of its current and former officers and members of its Board of Directors (the "Board").  This action seeks to remedy defendants' violations of law, including breaches of fiduciary duties, waste of corporate assets, and unjust enrichment that have caused substantial losses to the Company, as well as other damages, such as harms to its reputation and goodwill.

2.      Avon is a global manufacturer and distributor of beauty, household, and personal care products.  Avon's sales are primarily made to the ultimate consumer through direct selling by more than six million active independent representatives in over 140 countries across the world.

3.      Several of the foreign countries where Avon conducts its business are known to have less-developed legal and regulatory frameworks, or cultures in which requests for improper payments are widely condoned.  The Individual Defendants (as defined herein) allowed Avon to operate in these countries without implementing and maintaining internal controls and accounting systems necessary for the Company's compliance with the requirements of the Foreign Corrupt Practices Act ("FCPA").

4.      Due to its global presence and extensive overseas operations, Avon must comply with the FCPA.  Under the FCPA, it is unlawful for companies such as Avon to make payments to foreign officials to obtain or retain business.  The FCPA also requires that companies establish and maintain adequate internal controls to detect and prevent such bribes and kickbacks from occurring.  In addition, the FCPA requires public companies to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the transactions and

dispositions of the assets of the company (the "Books and Records Provision").  Non-compliance with the FCPA may result in substantial fines, sanctions, and other adverse actions, including exposing the company to civil liability.

5.      Avon first mentioned its potential FCPA violations on October 21, 2008, when it announced, via its Current Report on Form 8-K filed with the U.S. Securities and Exchange Commission ("SEC"), that "it is voluntarily conducting an internal investigation of its China operations, focusing on compliance with the [FCPA]...."  However, what initially started as a voluntary internal investigation into the improper payment of travel expenses for Chinese government officials has "grown."  The investigation spread to "additional countries," including, but not limited to, China, Brazil, Mexico, Argentina, India, and Japan.  Moreover, both the SEC and the U.S. Department of Justice ("DOJ") took notice and initiated their own investigations into the Company's FCPA violations.

6.      Amazingly, the Individual Defendants permitted Avon to violate the FCPA through 2010 even though they began the internal investigation in 2008.  Due to the fact that they were continually alerted to Avon's FCPA compliance failures, these defendants knew that: (i) Avon failed to implement adequate internal controls to prevent FCPA violations; (ii) after FCPA violations were uncovered, the deficient internal controls at the Company were not remedied; and (iii) the Company was failing to devise or implement internal controls to sufficiently identify, remedy, or prevent Avon's FCPA compliance issues.

7.      The Individual Defendants' failure to cause Avon to implement a system of internal controls to detect, remedy, or prevent FCPA violations has severely damaged Avon's business, goodwill, and reputation.  The Company has already spent more than *$338 million* in costs and expenses in connection with its FCPA violations.  Notably, this amount does not

include the financial penalty that Avon is certain to have to pay to resolve the pending DOJ and SEC investigations.

8.     On October 31, 2013, Avon filed its Quarterly Report on Form 10-Q with the SEC announcing that the SEC rejected the Company's $12 million settlement offer, and instead proposed terms of a potential settlement that included monetary fines "*of a magnitude significantly greater than [the] earlier offer*."  The Company explained that if it entered into a settlement with the DOJ and the SEC at comparable terms to the SEC's proposal, then the "*[C]ompany's earnings, cash flows, liquidity, financial condition and ongoing business would be materially adversely impacted*."

### THE BOARD IMPROPERLY REFUSES TO ACT IN RESPONSE TO PLAINTIFF'S DEMAND

9.     On May 27, 2011, plaintiff sent a letter to the Board of Avon demanding that it investigate and initiate litigation against those responsible for the Company's FCPA violations (the "Demand").  The Board then spent the next two-and-a-half years stonewalling plaintiff's Demand by: (i) conflating the prerequisites for sending a litigation demand and filing a derivative action; (ii) repeatedly implementing unnecessary evidentiary hurdles; (iii) causing long delays without any communication or substantive update as to the Company's internal investigation; and (iv) completely ignoring every request by plaintiff for an update on the Board's consideration of the Demand.

10.     In his most recent correspondence on October 11, 2013, Peter C. Hein, Esq. of Wachtell, Lipton, Rosen & Katz, the legal counsel representing the Board, sent a letter to plaintiff's counsel recycling old arguments, citing to inapposite case law, and continuing to obstruct plaintiff's Demand by requesting additional evidence of plaintiff's ownership of Avon stock.  Not once did Mr. Hein cite to any New York authority that suggested that plaintiff was

required to satisfy some additional type of evidentiary hurdle to have her Demand properly investigated. Plaintiff's counsel responded four days later, on October 15, 2013, pointing out the deficiencies in the Board's position.  Plaintiff's counsel concluded its October 15, 2013 letter by once again asking the questions that the Board kept avoiding, including when the Board "plans to finish its investigation and what steps have the Board and Audit Committee taken to preserve Avon's claims as time continues to pass."  Over a month has passed without any response from the Board.

11.     The Board still has not taken any action even though: (i) the Company has been involved in internal and governmental investigations into the purported wrongdoing for over *five years*; (ii) the Company already spent more than ***$338 million*** in legal and related costs and expenses in connection with its FCPA violations; and (iii) the applicable statutes of limitations for the Company's claims may arguably run in the near future – an issue that plaintiff's counsel specifically raised in correspondence with the Board.  The Board's refusal to act for two-and-a-half years is an effective refusal of the demand, which cannot be the product of a fully informed decision, and accordingly, is not protected by the business judgment rule.

12.     Due to the Board's refusal to act, plaintiff now brings this action to correct the harm the Individual Defendants have caused the Company.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction under 28 U.S.C. §1331 because plaintiff's state law claims are dependent on the resolution of substantial questions of federal law.  Specifically, plaintiff alleges that the Individual Defendants breached their fiduciary duties, wasted corporate assets, and were unjustly enriched by allowing Avon to violate the FCPA.  This action is not a

collusive action designed to confer jurisdiction on the court of the United States that it would not otherwise have.

14.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District Courts permissible under traditional notions of fair play and substantial justice.

15.     Venue is proper in this Court in accordance with 28 U.S.C. §1391(a) because: (i) Avon maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Avon, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

**Plaintiff**

16.     Plaintiff Sylvia Pritika has continuously been a shareholder of Avon since September 2007.

**Nominal Defendant**

17.     Nominal defendant Avon is a New York corporation with principal executive offices located at 777 Third Avenue, New York, New York.  Avon is a global manufacturer and marketer of products in the beauty, fashion, and home categories.  Avon's sales are primarily

made to the ultimate consumer through direct selling by more than six million active independent representatives.  Avon currently has sales operations in over 140 countries across the world.  Avon's reportable segments are based on geographic operations, and include commercial business units in Latin America, Europe, the Middle East, Africa, North America, and Asia Pacific.  During 2012, approximately 86% of Avon's consolidated revenue was derived from operations outside the U.S.

**Defendants**

18.     Defendant Ann S. Moore ("Moore") is an Avon director and has been since 1993.  Due to Avon's extensive overseas operations, defendant Moore knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business.  Defendant Moore also knew that, under the FCPA's Books and Records Provision, Avon had to implement a system of internal controls sufficient to prevent bribes and other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets.  Defendant Moore knowingly or recklessly allowed Avon to violate the FCPA by failing to implement and/or maintain adequate internal controls to ensure Avon's compliance with the FCPA.  Defendant Moore also knowingly or recklessly wrongfully refused plaintiff's Demand.  Avon paid defendant Moore the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2012 | $87,000 | $114,996 | - | $72 | $202,068 |
| 2011 | $87,000 | $115,012 | - | $72 | $202,084 |
| 2010 | $87,000 | $115,007 | - | $72 | $202,079 |
| 2009 | $60,000 | $100,003 | - | $72 | $160,075 |
| 2008 | $65,000 | $66,930 | - | $1,572 | $133,502 |
| 2007 | $65,000 | $100,004 | - | $77 | $165,081 |
| 2006 | $65,000 | $100,010 | $10,798 | $258 | $176,066 |

19.     Defendant Paula Stern ("Stern") is an Avon director and has been since 1997. Due to Avon's extensive overseas operations, defendant Stern knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business.  Defendant Stern also knew that, under the FCPA's Books and Records Provision, Avon had to implement a system of internal controls sufficient to prevent bribes and other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets.  Defendant Stern knowingly or recklessly allowed Avon to violate the FCPA by failing to implement and/or maintain adequate internal controls to ensure Avon's compliance with the FCPA.  Defendant Stern also knowingly or recklessly wrongfully refused plaintiff's Demand.  Avon paid defendant Stern the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Non Qualified Deferred Compensation Earnings | All Other Compensation | Total |
|---|---|---|---|---|---|---|
| 2012 | $87,000 | $114,996 | - | - | $10,805 | $212,801 |
| 2011 | $87,000 | $115,012 | - | - | $6,497 | $208,509 |
| 2010 | $87,000 | $115,007 | - | - | $11,200 | $213,207 |
| 2009 | $60,000 | $100,003 | - | - | $10,230 | $170,233 |
| 2008 | $60,000 | $66,930 | - | $616 | $5,972 | $133,518 |
| 2007 | $60,000 | $100,004 | - | $522 | $77 | $160,603 |
| 2006 | $60,000 | $100,010 | $10,798 | $727 | $396 | $171,931 |

20.     Defendant Maria Elena Lagomasino ("Lagomasino") is an Avon director and has been since 2000.  Defendant Lagomasino was also a member of Avon's Audit Committee from at least December 2005 to at least December 2007 and in at least February 2002.  Due to Avon's extensive overseas operations, defendant Lagomasino knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business.  Defendant Lagomasino also knew that, under the FCPA's Books and Records Provision, Avon had to implement a system of internal controls sufficient to prevent bribes and

other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets.   Defendant Lagomasino knowingly or recklessly allowed Avon to violate the FCPA by failing to implement and/or maintain adequate internal controls to ensure Avon's compliance with the FCPA.   Defendant Lagomasino also knowingly or recklessly wrongfully refused plaintiff's Demand.   Avon paid defendant Lagomasino the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2012 | $96,000 | $114,996 | - | $72 | $211,068 |
| 2011 | $96,000 | $115,012 | - | $72 | $211,084 |
| 2010 | $96,000 | $115,007 | - | $13,072 | $224,079 |
| 2009 | $65,000 | $100,003 | - | $12,572 | $177,575 |
| 2008 | $69,166 | $66,930 | - | $15,072 | $151,168 |
| 2007 | $65,000 | $100,004 | - | $77 | $165,081 |
| 2006 | $65,000 | $100,010 | $10,798 | $258 | $176,066 |

21.     Defendant W. Don Cornwell ("Cornwell") is an Avon director and has been since January 2002.   Defendant Cornwell is also a member of Avon's Audit Committee and has been since January 2002.   Due to Avon's extensive overseas operations, defendant Cornwell knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business.   Defendant Cornwell also knew that, under the FCPA's Books and Records Provision, Avon had to implement a system of internal controls sufficient to prevent bribes and other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets.   Defendant Cornwell knowingly or recklessly allowed Avon to violate the FCPA by failing to implement and/or maintain adequate internal controls to ensure Avon's compliance with the FCPA.   Defendant

Cornwell also knowingly or recklessly wrongfully refused plaintiff's Demand.   Avon paid defendant Cornwell the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2012 | $97,000 | $114,996 | - | $72 | $212,068 |
| 2011 | $91,000 | $115,012 | - | $72 | $206,084 |
| 2010 | $91,000 | $115,007 | - | $6,572 | $212,579 |
| 2009 | $65,000 | $100,003 | - | $10,572 | $175,575 |
| 2008 | $65,000 | $66,930 | - | $72 | $132,002 |
| 2007 | $65,000 | $100,004 | - | $77 | $165,081 |
| 2006 | $65,000 | $100,010 | $10,798 | $258 | $176,066 |

22.     Defendant Gary M. Rodkin ("Rodkin") is an Avon director and has been since May 2007.  Due to Avon's extensive overseas operations, defendant Rodkin knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business.  Defendant Rodkin also knew that, under the FCPA's Books and Records Provision, Avon had to implement a system of internal controls sufficient to prevent bribes and other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets.   Defendant Rodkin knowingly or recklessly allowed Avon to violate the FCPA by failing to implement and/or maintain adequate internal controls to ensure Avon's compliance with the FCPA.   Defendant Rodkin also knowingly or recklessly wrongfully refused plaintiff's Demand.  Avon paid defendant Rodkin the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2012 | $87,000 | $114,996 | $15,572 | $217,568 |
| 2011 | $87,000 | $115,012 | $15,572 | $217,584 |
| 2010 | $87,000 | $115,007 | $13,072 | $215,079 |
| 2009 | $60,000 | $100,003 | $13,072 | $173,075 |
| 2008 | $60,000 | $66,930 | $72 | $127,002 |
| 2007 | $47,500 | $100,004 | $49 | $147,553 |

23.     Defendant V. Ann Hailey ("Hailey") is an Avon director and has been since December 2008.  Due to Avon's extensive overseas operations, defendant Hailey knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business.  Defendant Hailey also knew that, under the FCPA's Books and Records Provision, Avon had to implement a system of internal controls sufficient to prevent bribes and other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets.  Defendant Hailey knowingly or recklessly allowed Avon to violate the FCPA by failing to implement and/or maintain adequate internal controls to ensure Avon's compliance with the FCPA.  Defendant Hailey also knowingly or recklessly wrongfully refused plaintiff's Demand.  Avon paid defendant Hailey the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2012 | $91,000 | $114,996 | $72 | $206,068 |
| 2011 | $91,000 | $115,012 | $72 | $206,084 |
| 2010 | $85,000 | $115,007 | $72 | $200,079 |
| 2009 | $69,166 | $124,963 | $72 | $194,201 |
| 2008 | $4,999 | - | $6 | $5,005 |

24.     Defendant Andrea Jung ("Jung") is currently Senior Advisor to Avon's Board of Directors and has been since December 2012.  Defendant Jung was also Avon's Executive Chairman from April 2012 to December 2012; Chairman of the Board from September 2001 to April 2012; Chief Executive Officer ("CEO") from November 1999 to April 2012; President from January 1998 to January 2001; Chief Operating Officer from July 1998 to November 1999; Executive Vice President from March 1997 to December 1997; President, Global Marketing from July 1996 to December 1997; President, Product Marketing for Avon U.S. from January 1994 to July 1996; and a director from January 1998 to December 2012.  Due to Avon's

extensive overseas operations, defendant Jung knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business. Defendant Jung also knew that, under the FCPA's Books and Records Provision, Avon had to implement a system of internal controls sufficient to prevent bribes and other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets. Defendant Jung knowingly, recklessly, or with gross negligence allowed Avon to violate the FCPA by failing to implement and/or maintain adequate internal controls to ensure Avon's compliance with the FCPA. Avon paid defendant Jung the following compensation as an executive:

| Year | Salary | Bonus | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | Change in Pension Value and Nonqualified Deferred Compensation Earnings | All Other Compensation | Total |
|------|--------|-------|--------------|---------------|----------------------------------------|------------------------------------------------------------------------|------------------------|-------|
| 2012 | $1,116,096 | - | $5,104,671 | - | - | - | $209,134 | $6,429,901 |
| 2011 | $1,375,000 | - | $4,811,998 | - | - | $3,723,794 | $207,227 | $10,118,019 |
| 2010 | $1,375,000 | - | - | $2,956,685 | $5,362,500 | $3,282,731 | $189,968 | $13,166,884 |
| 2009 | $1,375,000 | - | - | $2,395,162 | $3,043,906 | $2,458,429 | $182,947 | $9,455,444 |
| 2008 | $1,375,000 | - | - | $16,232,860 | $1,689,428 | $2,237,332 | $170,501 | $21,705,121 |
| 2007 | $1,375,000 | - | $3,016,771 | $2,246,353 | $4,317,500 | $1,656,953 | $166,129 | $12,778,706 |
| 2006 | $1,375,000 | - | $4,236,741 | $3,971,599 | $3,300,000 | $289,232 | $147,993 | $13,320,565 |
| 2005 | $1,375,000 | - | - | - | - | - | $119,267 | $1,494,267 |
| 2004 | $1,344,945 | $2,305,028 | $12,103,200 | - | - | - | $127,495 | $15,880,668 |
| 2003 | $1,213,425 | $1,304,753 | - | - | - | - | $54,119 | $2,572,297 |

25.   Defendant Susan J. Kropf ("Kropf") was Avon's President and Chief Operating Officer from January 2001 to July 2006; Executive Vice President and Chief Operating Officer, North America and Global Business Operations from November 1999 to January 2001; Executive Vice President and President, North America from March 1997 to November 1999; and a director from January 1998 to May 2006. Due to Avon's extensive overseas operations, defendant Kropf knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business. Defendant Kropf also knew that, under the FCPA's Books and Records Provision, Avon had to implement a

system of internal controls sufficient to prevent bribes and other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets.   Defendant Kropf knowingly, recklessly, or with gross negligence allowed Avon to violate the FCPA by failing to implement and/or maintain adequate internal controls to ensure Avon's compliance with the FCPA.   Avon paid defendant Kropf the following compensation as an executive:

| Year | Salary | Bonus | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | Long-Term Incentive Payouts | Change in Pension Value and Nonqualified Deferred Compensation Earnings | All Other Compensation | Total |
|------|--------|-------|--------------|---------------|----------------------------------------|------------------------------|------------------------------------------------------------------------|------------------------|-------|
| 2006 | $1,000,000 | - | $1,778,431 | $2,711,270 | $1,867,500 | - | $1,874,117 | $667,741 | $9,899,059 |
| 2005 | $853,151 | - | - | - | - | - | - | $57,004 | $910,155 |
| 2004 | $787,978 | $824,329 | - | - | - | $175,000 | - | $119,276 | $1,906,583 |
| 2003 | $737,808 | $640,985 | $3,228,550 | - | - | - | - | $32,873 | $4,640,216 |

26. Defendant Charles W. Cramb ("Cramb") was Avon's Vice Chairman, Developed Market Group from March 2011 to January 2012; Vice Chairman, Chief Finance and Strategy Officer from September 2007 to November 2011; and Executive Vice President, Finance and Technology and Chief Financial Officer from November 2005 to September 2007.   Due to Avon's extensive overseas operations, defendant Cramb knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business.   Defendant Cramb also knew that, under the FCPA's Books and Records Provision, Avon had to implement a system of internal controls sufficient to prevent bribes and other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets.   Defendant Cramb knowingly, recklessly, or with gross negligence allowed Avon to violate the FCPA by failing to implement and/or maintain adequate

internal controls to ensure Avon's compliance with the FCPA.  Avon paid defendant Cramb the following compensation as an executive:

| Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | Change in Pension Value and Nonqualified Deferred Compensation Earnings | All Other Compensation | Total |
|------|--------|--------------|---------------|----------------------------------------|------------------------------------------------------------------------|------------------------|-------|
| 2011 | $750,000 | $1,364,988 | - | - | $108,891 | $61,486 | $2,285,365 |
| 2010 | $750,000 | - | $860,127 | $1,863,750 | $136,494 | $63,663 | $3,674,034 |
| 2009 | $750,000 | $5,107,500 | $696,774 | $926,250 | $117,284 | $65,549 | $7,663,357 |
| 2008 | $750,000 | - | $702,502 | $526,575 | $116,631 | $72,527 | $2,168,235 |
| 2007 | $714,110 | $4,291,336 | $457,436 | $1,441,948 | $98,032 | $50,498 | $7,053,360 |
| 2006 | $700,000 | $143,896 | $633,285 | $785,400 | $44,669 | $50,010 | $2,357,260 |

27.     Defendant Bennett R. Gallina ("Gallina") was Avon's Senior Vice President, Western Europe, Middle East & Africa, Asia Pacific and China from January 2009 to February 2011; Senior Vice President, Western Europe, Middle East & Africa and China from November 2005 to December 2008; Senior Vice President and President, Asia Pacific from 2004 to 2005; Senior Vice President, Global Operations from 2000 to 2004; President of Avon Canada from 1998 to 2000; and various other positions in finance beginning in 1997.  Due to Avon's extensive overseas operations, defendant Gallina knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business.  Defendant Gallina also knew that, under the FCPA's Books and Records Provision, Avon had to implement a system of internal controls sufficient to prevent bribes and other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets.  Defendant Gallina knowingly, recklessly, or with gross negligence allowed Avon to violate the FCPA by failing to implement and/or maintain adequate internal controls to ensure Avon's compliance with the FCPA.   Avon paid defendant Gallina the following compensation as an executive:

- 13 -

| Year | Salary | Bonus | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | Change in Pension Value and Nonqualified Deferred Compensation Earnings | All Other Compensation | Total |
|---|---|---|---|---|---|---|---|---|
| 2009 | $625,000 | - | - | $438,968 | $507,500 | - | $220,377 | $1,791,845 |
| 2008 | $533,197 | $42,500 | $776,000 | $417,987 | $372,398 | $205,592 | $416,173 | $2,763,847 |

28.     Defendant Fred Hassan ("Hassan") was Avon's Chairman of the Board from January 2013 to April 2013, Lead Independent Director from February 2009 to December 2012, Presiding Director from May 2007 to February 2009, and a director from 1999 to April 2013. Due to Avon's extensive overseas operations, defendant Hassan knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business.  Defendant Hassan also knew that, under the FCPA's Books and Records Provision, Avon had to implement a system of internal controls sufficient to prevent bribes and other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets.  Defendant Hassan knowingly or recklessly allowed Avon to violate the FCPA by failing to implement and/or maintain adequate internal controls to ensure Avon's compliance with the FCPA.  Avon paid defendant Hassan the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Non Qualified Deferred Compensation Earnings | All Other Compensation | Total |
|---|---|---|---|---|---|---|
| 2012 | $113,000 | $114,996 | - | - | $72 | $228,068 |
| 2011 | $113,000 | $115,012 | - | - | $7,052 | $235,064 |
| 2010 | $113,000 | $115,007 | - | - | $72 | $228,079 |
| 2009 | $65,000 | $100,003 | - | - | $15,572 | $180,575 |
| 2008 | $65,000 | $66,930 | - | $1,105 | $5,322 | $138,357 |
| 2007 | $65,000 | $100,004 | - | $936 | $5,077 | $171,017 |
| 2006 | $60,000 | $100,010 | $10,798 | $1,306 | $396 | $172,510 |

29.     Defendant Stanley C. Gault ("Gault") was Avon's Chairman of the Board from November 1999 to September 2001, Presiding Director from at least January 2004 to May 2007, and a director from 1985 to May 2007.  Due to Avon's extensive overseas operations, defendant

Gault knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business.  Defendant Gault also knew that, under the FCPA's Books and Records Provision, Avon had to implement a system of internal controls sufficient to prevent bribes and other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets. Defendant Gault knowingly or recklessly allowed Avon to violate the FCPA by failing to implement and/or maintain adequate internal controls to ensure Avon's compliance with the FCPA.  Avon paid defendant Gault the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Non Qualified Deferred Compensation Earnings | All Other Compensation | Total |
|---|---|---|---|---|---|---|
| 2007 | $12,500 | - | - | $108,937 | $190 | $121,627 |
| 2006 | $65,000 | $100,010 | $10,798 | $101,000 | $1,236 | $278,044 |

30.     Defendant Edward T. Fogarty ("Fogarty") was an Avon director from 1995 to May 2010.  Defendant Fogarty was also a member of Avon's Audit Committee from at least January 2004 to May 2010.  Due to Avon's extensive overseas operations, defendant Fogarty knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business.  Defendant Fogarty also knew that, under the FCPA's Books and Records Provision, Avon had to implement a system of internal controls sufficient to prevent bribes and other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets. Defendant Fogarty knowingly or recklessly allowed Avon to violate the FCPA by failing to

implement and/or maintain adequate internal controls to ensure Avon's compliance with the FCPA.  Avon paid defendant Fogarty the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2010 | $26,168 | $126,292 | - | $65,672 | $218,132 |
| 2009 | $65,000 | $100,003 | - | $15,572 | $180,575 |
| 2008 | $70,000 | $66,930 | - | $72 | $137,002 |
| 2007 | $70,000 | $100,004 | - | $77 | $170,081 |
| 2006 | $70,000 | $100,010 | $10,798 | $1,236 | $182,044 |

31.     Defendant Lawrence A. Weinbach ("Weinbach") was an Avon director from 1999 to May 2013.  Defendant Weinbach was also Chairman of Avon's Audit Committee from at least February 2002 to May 2013.  Due to Avon's extensive overseas operations, defendant Weinbach knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business.  Defendant Weinbach also knew that, under the FCPA's Books and Records Provision, Avon had to implement a system of internal controls sufficient to prevent bribes and other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets. Defendant Weinbach knowingly or recklessly allowed Avon to violate the FCPA by failing to implement and/or maintain adequate internal controls to ensure Avon's compliance with the FCPA.  Avon paid defendant Weinbach the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Non Qualified Deferred Compensation Earnings | All Other Compensation | Total |
|---|---|---|---|---|---|---|
| 2012 | $95,000 | $114,996 | - | - | $15,572 | $225,568 |
| 2011 | $95,000 | $115,012 | - | - | $15,572 | $225,584 |
| 2010 | $95,000 | $115,007 | - | - | $15,572 | $225,579 |
| 2009 | $70,000 | $100,003 | - | - | $5,572 | $175,575 |
| 2008 | $70,000 | $66,930 | - | $6,021 | $15,072 | $158,023 |
| 2007 | $70,000 | $100,004 | - | $5,457 | $77 | $175,538 |
| 2006 | $70,000 | $100,010 | $10,798 | $7,112 | $762 | $188,682 |

32.    Defendant Paul S. Pressler ("Pressler") was an Avon director from July 2005 to April 2012.   Due to Avon's extensive overseas operations, defendant Pressler knew, at all relevant times, that Avon was subject to the FCPA, which bars publically-traded companies from bribing officials to obtain or retain business.   Defendant Pressler also knew that, under the FCPA's Books and Records Provision, Avon had to implement a system of internal controls sufficient to prevent bribes and other illicit payments from occurring at its overseas operations, and to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflect the transactions and dispositions of the Company's assets.   Defendant Pressler knowingly or recklessly allowed Avon to violate the FCPA by failing to implement and/or maintain adequate internal controls to ensure Avon's compliance with the FCPA.   Avon paid defendant Pressler the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2012 | $18,956 | - | - | $18 | $18,974 |
| 2011 | $97,000 | $115,012 | - | $2,572 | $214,584 |
| 2010 | $97,000 | $115,007 | - | $72 | $212,079 |
| 2009 | $70,000 | $100,003 | - | $72 | $170,075 |
| 2008 | $64,166 | $66,930 | - | $72 | $131,168 |
| 2007 | $60,000 | $100,004 | - | $77 | $160,081 |
| 2006 | $60,000 | $100,010 | $30,858 | $138 | $191,006 |

33.    The defendants identified in ¶¶24-27 are referred to herein as the "Officer Defendants."   The defendants identified in ¶¶18-24, 28-32 are referred to herein as the "Director Defendants."   The defendants identified in ¶¶20-21, 30-31 are referred to herein as the "Audit Committee Defendants."   Collectively, the defendants identified in ¶¶18-32 are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

34.     By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and owe Avon and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Avon in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Avon and not in furtherance of their personal interest or benefit.

35.     To discharge their duties, the officers and directors of Avon were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Avon were required to, among other things:

(a)     devise and maintain a system of internal controls sufficient to ensure Avon's compliance with all  legal and regulatory requirements, including the FCPA;

(b)     conduct the affairs of the Company in an efficient, business-like manner in compliance with all applicable laws, rules, and regulations so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; and

(c)     remain informed as to how Avon conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

**Breaches of Duties**

36.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Avon, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware or reckless in not being aware posed a risk of serious injury to the Company.

37.     The Individual Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to violate the FCPA.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  As a result, Avon has expended significant sums of money.

38.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of Avon, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  As a result, and in addition to the damage the Company has already incurred, Avon has expended, and will continue to expend, significant sums of money.

**Additional Duties of the Audit Committee Defendants**

39.     In addition to these duties, under the Company's Audit Committee Charter, the Audit Committee Defendants, defendants Lagomasino, Cornwell, Fogarty, and Weinbach, owed specific duties to Avon to set up corporate functions to comply with all applicable laws, rules, and regulations.  Moreover, the Audit Committee was responsible for reviewing and approving the Company's accounting, financial reporting, and internal controls.  Defendants Lagomasino,

Cornwell, Fogarty, and Weinbach were also charged with directly assisting the Board in overseeing Avon's compliance with legal and regulatory requirements, including the FCPA.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

40.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

41.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct.  During this time, the Individual Defendants caused or allowed the Company to violate the FCPA, including the FCPA's Books and Records Provision.

42.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment; and to conceal adverse information concerning the Company's operations, financial condition, and future business prospects.

43.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly violate the FCPA.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

44.     Each of the Individual Defendants aided and abetted, and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the

commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## SUBSTANTIVE ALLEGATIONS

45.     Avon has been in existence since 1886 and is the world's largest direct seller. It markets beauty, fashion and home products to women in more than 140 countries through more than six million independent Avon sales representatives.  A number of these countries are known to have less developed legal and regulatory frameworks, and/or cultures in which requests for improper payments are prevalent. This action arises from the Individual Defendants' failure to implement and maintain adequate internal controls and accounting systems over the Company's business and operations, as required by the FCPA, in these foreign and developing countries.

**Overview of the FCPA**

46.     As an issuer under the U.S. federal securities laws, Avon's business and operations are subject to the requirements of the FCPA.  The FCPA requires covered companies to devise and maintain a system of internal controls sufficient to detect and prevent bribes and kickbacks from occurring.  The FCPA also requires, among other things, covered companies to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer.  More specifically, the FCPA, enacted by Congress in 1977, provides, in relevant part, as follows:

(a)     Prohibition

*It shall be unlawful for any issuer which has a class of securities registered pursuant to section 78l of this title or which is required to file reports under section 78o(d) of this title, or for any officer, director, employee, or agent of such issuer or any stockholder thereof acting on behalf of such issuer, to make use of the mails or any means or instrumentality of interstate commerce*

*corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to* –

(1)     *any foreign official* for purposes of –

(A)     (i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage; or

(B)     inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

*in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person;*

(2)     *any foreign political party or official thereof or any candidate for foreign political office* for purposes of –

(A)     (i) influencing any act or decision of such party, official, or candidate in its or his official capacity, (ii) inducing such party, official, or candidate to do or omit to do an act in violation of the lawful duty of such party, official, or candidate, or (iii) securing any improper advantage; or

(B)     inducing such party, official, or candidate to use its or his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality.

*in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person; or*

(3)     *any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official, to any foreign political party or official thereof, or to any candidate for foreign political office*, for purposes of –

(A)     (i) influencing any act or decision of such foreign official, political party, party official, or candidate in his or its official capacity, (ii) inducing such foreign official, political party, party official, or candidate to do or omit to do any act in violation of the lawful duty of such foreign official, political party, party official, or candidate, or (iii) securing any improper advantage; or

(B)     inducing such foreign official, political party, party official, or candidate to use his or its influence with a foreign government or

instrumentality thereof to affect or influence any act or decision of such government or instrumentality,

**in order to assist such issuer in obtaining or retaining business for or with, or directing business to, any person.**

15 U.S.C. §78dd-1.

47.     With respect to an issuer's books and records and internal controls obligations, the

FCPA further provides, in relevant part, as follows:

(2)     **Every issuer which has a class of securities registered pursuant to section 78l of this title and every issuer which is required to file reports pursuant to section 78o(d) of this title shall** –

(A)     **make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer**; and

(B)     **devise and maintain a system of internal accounting controls** sufficient to provide reasonable assurances that –

(i) transactions are executed in accordance with management's general or specific authorization;

(ii) transactions are recorded as necessary

(I)     to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and

(II)     to maintain accountability for assets;

(iii) access to assets is permitted only in accordance with management's general or specific authorization; and

(iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

15 U.S.C. §78m.

**Avon's FCPA Violations**

48.     The Individual Defendants had a duty to ensure Avon had in place a system of internal controls to maintain compliance with the FCPA.  The Individual Defendants ignored this duty and caused or allowed the Company to violate the FCPA by failing to implement or maintain an effective internal system of controls for detecting and preventing bribes to foreign officials in several foreign countries, including, but not limited to, China, Brazil, Mexico, Argentina, India, and Japan.

49.     As a result of the Individual Defendants' breaches of fiduciary duty, Avon is now being investigated by the U.S. Government for violations of the FCPA.  The details surrounding the FCPA investigation into Avon's business practices have been closely guarded and have not been fully disclosed to Avon's shareholders.

50.     The first time Avon mentioned its potential FCPA violations was on October 21, 2008, when Avon announced, via its Current Report on Form 8-K, that "it is voluntarily conducting an internal investigation of its China operations, focusing on compliance with the Foreign Corrupt Practices Act ...."  According to the press release attached to the October 21, 2008 Form 8-K, the investigation had begun in June 2008 "after [Avon] received an allegation that certain travel, entertainment and other expenses may have been improperly incurred in connection with the Company's China operations."  Avon further stated that "[t]he [C]ompany has voluntarily contacted the Securities and Exchange Commission and the United States Department of Justice to advise both agencies that an investigation is underway."

51.     Shareholders soon learned that the Company's potential FCPA violations were not only occurring in China.  In its July 30, 2009 Quarterly Report on Form 10-Q filed with the SEC,

Avon announced that its internal investigation "relating to the Foreign Corrupt Practices Act and related U.S. and foreign laws" had spread to "additional countries."

52.     On February 25, 2010, Avon filed its Annual Report on Form 10-K for the fiscal year 2009 with the SEC, stating that its internal investigation is "focused on reviewing certain expenses and books and records processes, including, but not limited to, travel, entertainment, gifts, and payments to third-party agents and others, in connection with our business dealings, directly or indirectly, with foreign governments and their employees."  In the same Form 10-K, for the first time, Avon revealed to its shareholders the potential consequences of the FCPA investigation, stating:

> *Any determination that our operations or activities are not in compliance with existing United States or foreign laws or regulations could result in the imposition of substantial fines, interruptions of business, termination of necessary licenses and permits, and other legal or equitable sanctions*. Other legal or regulatory proceedings, as well as government investigations, which often involve complex legal issues and are subject to uncertainties, may also follow as a consequence ....

53.     On April 13, 2010, *The Wall Street Journal* reported that Avon had suspended several of its top executives, including S.K. Kao, President of Avon's China unit; Jimmy Beh, Chief Financial Officer for Avon's China unit; C.Q. Sun, Head of the Corporate Affairs and Government Relations Group for Avon's China unit; and Ian Rossetter, head of internal audit at Avon until mid-2009.  The Company ultimately terminated these executives.

54.     *The Wall Street Journal* also reported that Avon's initial investigation centered on trips to France, New York, Canada, and Hawaii for Chinese government officials with ties to Avon's business, and that the scale of the bribery was originally around several million dollars, but has "grown."  According to the anonymous source, the Company's investigation began after an employee wrote a letter directly to defendant Jung detailing the improper spending.

55.     During a conference call with investors and analysts on April 30, 2010, defendant Jung conceded that the initial allegations about the Company's FCPA violations were made in the form of a letter directly to her.  Defendant Jung also stated that the investigation expanded beyond China and focused on "a selection of markets representing each of [the Company's] four international business units *outside of China*."

56.     The next day, on June 1, 2010, a Fitch Ratings analyst confirmed the expansion of the investigation.  According to the Fitch Ratings analyst, Avon's FCPA investigation had "expanded to a dozen or more countries."

57.     On May 25, 2011, *The Wall Street Journal* reported that defendant Gallina, who had been placed on administrative leave in connection with the investigation, had "left the company."  *The Wall Street Journal* also reported that:

> *Federal prosecutors are investigating several former Avon Products Inc. employees, raising the prospect of criminal charges* in an ongoing probe into allegations the company bribed foreign officials, people familiar with the matter said.

58.     Avon denied its ability to predict the duration, scope, developments in, results of, or consequences of its internal investigation and the government investigations until recently.  In August 2013, the Company disclosed that it had begun settlement talks with the government.  In its Quarterly Report on Form 10-Q filed August 1, 2013 with the SEC, Avon stated that it made an offer of settlement to the DOJ and the SEC in June 2013 that, among other terms, included the payment of monetary penalties of approximately *$12 million*.

59.     On October 31, 2013, Avon filed its Quarterly Report on Form 10-Q with the SEC announcing that the government rejected the Company's $12 million settlement offer, and instead proposed terms of a potential settlement that included monetary fines "*of a magnitude significantly greater than [the] earlier offer*."  The Company explained that if it entered into a

settlement with the DOJ and the SEC at comparable terms to the SEC's proposal, then the "Company's earnings, cash flows, liquidity, financial condition and ongoing business would be materially adversely impacted."  The Form 10-Q stated:

> ***In September 2013, the staff of the SEC proposed terms of potential settlement that included monetary penalties of a magnitude significantly greater than our earlier offer***. We disagree with the SEC staff's assumptions and the methodology used in its calculations and believe that monetary penalties at the level proposed by the SEC staff are not warranted. We anticipate that the DOJ also will propose terms of potential settlement, although they have not yet done so and we are unable to predict the timing or terms of any such proposal. If the DOJ's offer is comparable to the SEC's offer and if the Company were to enter into settlements with the SEC and the DOJ at such levels, ***we believe that the Company's earnings, cash flows, liquidity, financial condition and ongoing business would be materially adversely impacted***.

**The FCPA Violations Were a Result of the Individual Defendants' Failure to Implement Adequate Internal Controls**

60.     As further detailed below, Avon essentially lacked any functioning internal controls to ensure the Company's compliance with the FCPA.  Moreover, even though Avon was made aware of widespread bribery in June 2008 at the latest, Avon continued to engage in illegal business practices in violations of the FCPA until at least 2010.  Avon's lack of functional internal controls included that:

(a)     Avon failed to create or implement in good faith an internal audit function which effectively reported to independent monitoring bodies within the Company. This is evident because the head of the internal audit unit at Avon's headquarters has been implicated in the wrongdoing described herein.

(b)     Avon failed to create or implement in good faith an internal audit function which ensured that the reporting of matters to independent monitoring bodies within the Company was the duty of one or more senior corporate officers.  This is evident

because the head of the internal audit unit at Avon's headquarters has been implicated in the wrongdoing described herein.

(c)    Avon failed to create or implement in good faith an internal audit function with an adequate level of autonomy from management. This is evident because the head of the internal audit unit at Avon's headquarters has been implicated in the wrongdoing described herein.

(d)    Avon failed to adopt and implement a meaningful Code of Business Conduct & Ethics with a focus on compliance with laws against bribery, an area of specific risk to Avon, with compliance standards and procedures to facilitate the effective operation of the Code.

(e)    Avon failed to adopt and implement a Code of Business Conduct & Ethics that refrained from seeking or accepting exemptions not contemplated in the statutory or regulatory framework of the FCPA and other laws against bribery. With regard to improper foreign payments, Avon's Code of Business Conduct & Ethics states that the Company "discourages" payment of "tips of nominal value to low level foreign government employees," "even if [such payments are] legal." Further, Avon's Code of Business Conduct & Ethics states that "the FCPA and Avon do not bar certain reasonable and bona fide expenditures for travel or entertainment of foreign officials," when the payment is, among other things, "not lavish," "infrequent," and where the expenditure is "directly related to the promotion ... of the Company's products or services ...."

(f)     Avon failed to adopt and implement a Code of Business Conduct & Ethics and related internal controls at all levels of the company, including the conduct of directors, officers, and employees.

(g)     Avon failed to adopt and implement a Code of Business Conduct & Ethics, compliance programs, an internal audit function, and internal controls which applied to all entities over which the Company has effective control, including but not limited to Avon's China, Latin America (Brazil and Argentina), Mexico and Japan operations.

(h)     Avon failed to implement in good faith a functional internal audit system. This is evident because the initial allegations were made not through the Company's audit functions, but in the form of a letter to its CEO, defendant Jung.

(i)     Avon failed to adopt and implement measures designed to ensure periodic communications and documented training for all levels of the Company, and including all entities over which the Company has effective control, including in particular Avon's China operations.

(j)     Avon failed to adopt and implement effective measures for providing guidance and advice to directors and officers on complying with laws against bribery, with the Company's Code of Business Conduct & Ethics, and with related compliance programs or measures, including when urgent advice is required on difficult business situations in foreign jurisdictions, including but not limited to China, Latin America (Brazil and Argentina), Mexico, India and Japan.

## DAMAGES

61.     Avon has been, and will continue to be, severely damaged and injured by the Individual Defendants' misconduct.  Further, as a direct and proximate result of the Individual Defendants' misconduct, Avon has expended and will continue to expend significant sums of money. In 2009, Avon spent $35 million in legal costs and related expenses in connection with the FCPA investigation; $96 million in 2010; $93 million in 2011; $92 million in 2012; and another $22 million through the first three quarters in 2013.  Notably, these amounts do not include the pecuniary penalty that Avon is certain to have to pay to resolve the pending DOJ and SEC investigations.  By its own admission, this pecuniary penalty may materially adversely impact the Company "earnings, cash flows, liquidity, financial condition and ongoing business."

## DEMAND REFUSED

62.     Plaintiff brings this action derivatively in the right and for the benefit of Avon to redress injuries suffered by Avon as a direct result of the aforesaid breaches of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Avon is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

63.     Plaintiff will adequately and fairly represent the interests of Avon in enforcing and prosecuting its rights.

64.     Plaintiff was a shareholder of Avon at the time of the wrongdoing complained of herein.  After plaintiff became an Avon shareholder, she has continuously been a shareholder.

65.     Plaintiff has made a demand upon the Board to investigate and remedy the violations of law described herein as required by New York law.  As set forth below, the Board

has not taken any action to hold its fiduciaries accountable for their wrongdoing, even with the risk of the impending statute of limitations jeopardizing the Company's claims. The Board's wrongful decision to refuse plaintiff's Demand was unfounded in law, and was not made on the basis of a good faith and reasonable investigation of the claims made in plaintiff's Demand. The members of the Board breached their fiduciary duty to inform themselves of all material information reasonably available before determining to refuse plaintiff's Demand. Nor was their decision made in the best interests of Avon. The Board's decision is not entitled to the protection of the business judgment rule.

66.     On May 27, 2011, plaintiff sent the Demand to the Board. The Demand alleged that improper business practices, including the apparent payments of illegal bribes and kickbacks to foreign officials, had been occurring at Avon under defendant Jung's supervision since 1999. The Demand explained how these practices violated the FCPA, and have, at great detriment to the Company, drawn the ire of the SEC and the DOJ. The Demand also described various credible bases for these allegations, including an article in the *Wall Street Journal* and the Company's own disclosures. In the Demand, plaintiff demanded that the Board "undertake an investigation of the wrongdoing detailed [in the Demand] through a committee of the Board consisting of independent and disinterested directors with the assistance of independent outside legal counsel." Plaintiff further demanded that the Board "commence legal proceedings against each party identified as being responsible for the mismanagement and other related misconduct," and identified the claims to be asserted in the eventual litigation. The Demand also noted that "to the extent that relevant statute of limitations periods expire prior to the Board commencing legal proceedings or obtaining tolling agreements, the Board must investigate and pursue claims for breaches of fiduciary duties and/or legal malpractice against those who allowed any statute of

limitations periods to expire." A true and correct copy of the Demand is attached hereto as Exhibit A.

67.     On June 15, 2011, plaintiff's counsel received a response from Kim K.W. Rucker, Esq., Avon's general counsel.   Ms. Rucker stated that the Board would not consider the allegations in the Demand until it received "documentation of Ms. Pritika's status as a current shareholder and shareholder at all times relevant to the matters referenced in [the Demand]."  A true and correct copy of Ms. Rucker's June 15, 2011 correspondence is attached hereto as Exhibit B.

68.     Plaintiff's counsel responded to Ms. Rucker's letter the next day, on June 16, 2011.  Plaintiff's counsel addressed the issue of additional documentation and strongly objected to the Board's decision not to immediately review the allegations contained in the Demand.  In his letter, plaintiff's counsel informed the Board that the ownership standard mentioned in Ms. Rucker's June 15, 2011 correspondence seriously compromised the evidentiary standard required for a shareholder demand.   Plaintiff's counsel reminded Ms. Rucker that there is no legal requirement that a shareholder must provide proof of ownership in order to make a litigation demand, and provided legal authority supporting this point.   As a result, plaintiff's counsel informed the Board that plaintiff would decline her request for additional documentation. Plaintiff's counsel concluded the letter by requesting that the Company provide notice of the Board's decision to consider the Demand by no later than July 1, 2011.  A true and correct copy of plaintiff's counsel's June 16, 2011 correspondence is attached hereto as Exhibit C.

69.     On June 30, 2011, plaintiff's counsel received a response from Peter C. Hein, Esq. of Wachtell, Lipton, Rosen & Katz.  Mr. Hein stated that he was responding to plaintiff counsel's June 16, 2011 correspondence at the request of Ms. Rucker.  In his letter, Mr. Hein continued to

reiterate Ms. Rucker's incorrect position that the Company does not have to entertain a demand if the individual making the demand does not provide proof of ownership.  In addition, Mr. Hein claimed that, "[a]s the Audit Committee (comprised of independent directors) and the Board have already been doing, the Audit Committee and the Board, as appropriate, will continue to make determinations concerning whether any further actions are appropriate, beyond the actions already taken, already underway or under consideration, in connection with Avon's internal investigation and related efforts.  A true and correct copy of Mr. Hein's June 30, 2011 correspondence is attached hereto as Exhibit D.

70.     On July 6, 2011, plaintiff's counsel sent a response to Mr. Hein addressing his June 30, 2011 correspondence, and noting plaintiff's continued disappointment in the Board's decision to withhold consideration of the Demand.  Plaintiff's counsel explained to Mr. Hein that much of the New York case law cited in his previous letter related only to shareholder derivative actions, and not litigation demands made upon the Board, and that therefore, plaintiff reiterated her decision to decline furnishing any additional documentation.  Plaintiff's counsel then reminded Mr. Hein that even though Avon contacted the SEC and DOJ about the FPCA violations in 2008, these violations were allowed to continue at the Company until 2010.  As a result, plaintiff's counsel explained that not only has the Company's Audit Committee failed to properly investigate the matter, but that the Committee itself has proven to be completely ineffective.  Plaintiff's counsel concluded his letter by stating that "it appears that the Board and Audit Committee have not only failed to consider [the Demand], but have taken no action specifically in response to [the Demand]."   Plaintiff's counsel requested that Mr. Hein inform him "whether the Board is considering [the Demand] and, if so, when the Board will

communicate its decision to [Plaintiff]." A true and correct copy of plaintiff's counsel's July 6, 2011 correspondence is attached hereto as Exhibit E.

71.     On August 2, 2011, plaintiff's counsel received a response from Mr. Hein that indicated that plaintiff's previous correspondences from May 27, 2011, June 30, 2011, and July 6, 2011, were forwarded to the Board for further consideration.  According to Mr. Hein, the Board reviewed the materials at a July 14, 2011 meeting, and "it was noted that the Board will, as may be appropriate, consider matters raised in [this] correspondence as the internal investigation and compliance reviews continue."  Mr. Hein's letter stated that "[i]t was further noted that, as the Audit Committee and the Board have already been doing, the Audit Committee and the Board, as appropriate, will continue to make determinations concerning whether any further actions are appropriate, in connection with Avon's internal investigation and compliance reviews and related efforts, in addition to the actions already taken, already underway or under consideration."  A true and correct copy of Mr. Hein's August 2, 2011 correspondence is attached hereto as Exhibit F.

72.     On August 5, 2011, plaintiff's counsel sent a letter to Avon indicating that while plaintiff was glad that the Board was finally shown the Demand, she remained troubled by a number of still unanswered questions.  Specifically, the letter addressed Avon's continued failure to address allegations in the Demand, including the failure to investigate blatantly inadequate internal controls at the Company, as well as those fiduciaries responsible for the FCPA violations.  Plaintiff's counsel concluded the correspondence by reminding the Board that it has not responded to plaintiff's request for an approximate date for when the Board believes it will complete its investigation and communicate its findings.  A true and correct copy of plaintiff's counsel's August 5, 2011 correspondence is attached hereto as Exhibit G.

73.     On November 2, 2011, plaintiff's counsel sent Mr. Hein a supplemental demand that the Board "investigate, address, remedy, and commence proceedings against certain officers and directors for violations of applicable laws, rules, and regulations that have led to a ***second*** formal [SEC] investigation."  This second SEC investigation concerned potential violations of Regulation FD as a result of certain improper communications between Company officials and analysts regarding Avon's FCPA investigation.  A true and correct copy of the supplemental demand is attached hereto as Exhibit H.

74.     On November 21, 2011, in response to the supplemental demand, plaintiff's counsel received yet another request from Mr. Hein demanding documentation to verify that plaintiff is and was at all asserted relevant times a holder of Avon common stock.  Mr. Hein stated that the Company intends to cooperate fully with the SEC's ongoing investigations, and that plaintiff's November 2, 2011 supplemental demand letter has been "provided to the Board for its consideration."  Mr. Hein did not provide any other substantive information regarding the Board's purported investigation of plaintiff's Demand.  A true and correct copy of Mr. Hein's November 21, 2011 correspondence is attached hereto as Exhibit I.

75.     On November 29, 2011, plaintiff's counsel replied to the November 21, 2011 letter from Mr. Hein.  In this letter, plaintiff's counsel provided the Board with proof of plaintiff's stock ownership in Avon in the hopes that this would finally spur the Board to fulfill its fiduciary duties and properly respond to the Demand.  Plaintiff's counsel also provided additional information regarding the apparent wrongdoing at the Company and identified the directors responsible for the wrongdoing.  A true and correct copy of plaintiff's counsel's November 29, 2011 correspondence is attached hereto as Exhibit J.

76.     Plaintiff's counsel received a letter from Mr. Hein on December 20, 2011, confirming that he received documentation of plaintiff's current shareholder status.  However, rather than finally substantively responding to plaintiff's Demand, Mr. Hein implemented yet another unnecessary hurdle for plaintiff.  Mr. Hein now insisted on receiving an additional unredacted document confirming plaintiff's proof of stock ownership.  Mr. Hein failed to mention why the redacted portions of the account statement plaintiff provided on November 29, 2011 rendered the proof of stock ownership inadequate.   Mr. Hein also questioned whether the account statement was generated by a third party or by plaintiff, without explaining the significance of this inquiry.  A true and correct copy of Mr. Hein's December 20, 2011 correspondence is attached hereto as Exhibit K.

77.     On December 20, 2011, plaintiff's counsel responded to Mr. Hein's letter by explaining that his request for additional documentation is irrelevant for the purpose of the Board's response, and that plaintiff was concerned by the actions the Board and the Audit Committee have taken in response to the Demand.  In a letter dated February 10, 2012, Mr. Hein repeated his request for additional documentation, ignoring plaintiff's concerns.  True and correct copies of the December 20, 2011 and February 10, 2012 correspondences are attached hereto as Exhibits L and M.

78.     On August 5, 2013, nearly **_eighteen months_** after receiving absolutely no updates regarding plaintiff's Demand, plaintiff's counsel sent a letter to Mr. Hein requesting an update on the Board's consideration of the Demand and the status of the Company's internal investigation. A true and correct copy of plaintiff's counsel's August 5, 2013 correspondence is attached hereto as Exhibit N.

79.     On August 27, 2013, Mr. Hein sent a letter responding to plaintiff's counsel.  In his response letter, Mr. Hein once again repeated his request for additional documentation from the plaintiff.  Even after such a long time had passed without any communications, Mr. Hein did not offer plaintiff any specific details about the status of the Company's internal investigation and only discussed what the Company had already previously disclosed in its public filings. While explaining the status of the Company's negotiations with the SEC and the DOJ, and stating that the SEC and DOJ rejected the Company's settlement offer of *$12 million*, Mr. Hein did not once mention anything about holding the Company's fiduciaries accountable for their involvement in the underlying wrongdoing.  A true and correct copy of Mr. Hein's August 27, 2013 correspondence is attached hereto as Exhibit O.

80.     On September 5, 2013, plaintiff's counsel sent a response to Mr. Hein addressing his August 27, 2013 correspondence.  First, plaintiff's counsel reiterated that plaintiff had already furnished proof that she owns Avon stock.  Second, plaintiff's counsel asked Mr. Hein to "explain the relevance of when [plaintiff] purchased Avon shares to the Board [] investigation." Third, plaintiff's counsel reminded Mr. Hein that plaintiff made her Demand "over two years ago," and asked for an expected date of completion of the Board's purported investigation of the Demand.  Plaintiff's counsel concluded by asking Mr. Hein what steps the Board has taken to preserve the Company's claims against an argument that an applicable statute of limitations has expired.  A true and correct copy of plaintiff counsel's September 5, 2013 correspondence is attached hereto as Exhibit P.

81.     On October 11, 2013, Mr. Hein sent a letter to plaintiff's counsel recycling old arguments, citing to inapposite case law, and continuing to stonewall plaintiff's Demand by requesting additional evidence of plaintiff's ownership of Avon stock.  Not once did Mr. Hein

cite to any New York authority that suggested that plaintiff was required to satisfy an additional evidentiary hurdle to have her Demand properly investigated.  Plaintiff's counsel responded four days later, on October 15, 2013, pointing out the deficiencies in Mr. Hein's legal arguments and reiterating the fact that Mr. Hein was confusing the prerequisite for sending a litigation demand and the prerequisite for filing a derivative action.  Plaintiff's counsel concluded his October 15, 2013 letter by once again asking Mr. Hein the question that he kept avoiding, "when does the [] Board or Audit Committee expect to finish its investigation?"  True and correct copies of the October 11, 2013 and October 15, 2013 correspondences are attached hereto as Exhibits Q and R, respectively.  In excess of a month has passed without any response from the Board.

82.     Plaintiff's institution of this action is necessary to preserve the claims asserted herein for the benefit of the Company.  New York has a six-year statute of limitations for breach of fiduciary duty claims.  The public first learned of the wrongdoing associated with the Company's FCPA troubles on October 21, 2008, when Avon announced, via its Current Report on Form 8-K, that "it is voluntarily conducting an internal investigation of its China operations, focusing on compliance with the Foreign Corrupt Practices Act ...."  Accordingly, the statute of limitations for the claims alleged herein arguably runs out in less than one year, on October 21, 2014.  Notwithstanding the impending statute of limitations, plaintiff is unaware of the defendants causing the Company to enter into tolling agreements with ***any*** of the named defendants.

83.     Plaintiff has not made any demand on the other shareholders of Avon to institute this action since such demand would be a futile and useless act for at least the following reasons:

(a)     Avon is a publicly held company with over 433 million shares outstanding and thousands of shareholders;

(b)      making demand on such a large number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of such shareholders; and

(c)      making demand on all Avon shareholders would force plaintiff to incur excessive expenses, assuming all such shareholders could be individually identified.

## COUNT I

### Against All Individual Defendants for Breach of Fiduciary Duty

84.      Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

85.      As alleged in detail herein, the Individual Defendants, by reason of their positions as officers and directors of Avon, and because of their ability to control the business and corporate affairs of Avon, owed to Avon fiduciary obligations of due care and loyalty, and were and are required to use their utmost ability to control and manage Avon in a fair, just, honest, and equitable manner.  These duties include an obligation, of which the Individual Defendants were fully aware, to manage Avon's business and related affairs lawfully and in accordance with the laws applicable to Avon's operations, including the FCPA.

86.      The Officer Defendants breached their duty of loyalty by knowingly, recklessly, or with gross negligence allowing the Company to violate the FCPA by failing to implement and maintain an adequate system of internal controls to detect and prevent the illegal business conduct discussed herein.  Moreover, the Officer Defendants also breached their fiduciary duties by continuing to permit Avon to violate the FCPA through 2010, even though they had commenced an internal investigation in June 2008.

87.     The Director Defendants breached their duty of loyalty and due care by knowingly or recklessly allowing the Company to violate the FCPA by failing to implement and maintain an adequate system of internal controls to detect and prevent the illegal business conduct discussed herein.  Moreover, the Director Defendants breached their fiduciary duties by continuing to permit Avon to violate the FCPA through 2010, even after they had commenced an internal investigation in June 2008.

88.     The Audit Committee Defendants failed to ensure that management had in place a system of internal controls to ensure compliance with the FCPA.  Accordingly, the Audit Committee Defendants completely and utterly failed in their duty of oversight as required by the Audit Committee Charter in effect at the time.

89.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Avon has sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

90.     Plaintiff, on behalf of Avon, has no adequate remedy at law.

## COUNT II

### Against All Individual Defendants for Waste of Corporate Assets

91.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

92.     The wrongful conduct alleged included the failure to implement adequate internal controls to detect and prevent the illicit payments made by the Company.  Under the Individual Defendants' purview, Avon violated the FCPA by bribing or otherwise improperly incentivizing foreign officials in several countries including, but not limited to, China, Brazil, Mexico, Argentina, India, and Japan.  The Company has already spent more than $338 million in legal

costs and related expenses in connection with its FCPA violations.  Additionally, Avon will incur

further damages to resolve its FCPA violations.  Therefore, any temporary benefits that Avon

may have obtained through bribery have been eclipsed by the damages arising from the

Individual Defendants' failure to cause Avon to implement internal controls to ensure

compliance with the FCPA.  Further, the Individual Defendants caused Avon to waste its assets

by paying improper compensation and bonuses to certain of its executive officers and directors

that had breached their fiduciary duties.

93.     The wrongful conduct was continuous, connected, and was on-going throughout

the applicable time period.  It resulted in continuous, connected, and on-going harm to the

Company.

94.     As a result of the waste of corporate assets, the Individual Defendants are liable to

the Company.

95.     Plaintiff, on behalf of Avon, has no adequate remedy at law.

## COUNT III

### Against All Individual Defendants for Unjust Enrichment

96.     Plaintiff incorporates by reference and realleges each and every allegation set

forth above, as though fully set forth herein.

97.     By their wrongful acts and omissions, the Individual Defendants were unjustly

enriched at the expense of and to the detriment of Avon.  The Individual Defendants were

unjustly enriched as a result of the compensation they received while breaching their fiduciary

duties owed to Avon.

98.     Plaintiff, as a shareholder and representative of Avon, seeks restitution from these

defendants, and each of them, and seeks an order of this Court disgorging all of their profits,

benefits, and other compensation obtained by these defendants, and each of them, arising from their wrongful conduct and fiduciary breaches.

99.     Plaintiff, on behalf of Avon, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Avon, demands judgment as follows:

A.      Against the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duty, waste of corporate assets, unjust enrichment, and aiding and abetting breaches of fiduciary duties;

B.      Directing Avon to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws, and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation, and taking such other action as may be necessary to place before shareholders for a vote  the following Corporate Governance Policies:

1.      a proposal to strengthen the Company's internal controls over FCPA compliance and record keeping, including the creation of a Board committee that would examine all foreign operations;

2.      a proposal to strengthen the Company's internal audit function, including ensuring that it has an adequate level of autonomy from management, and effectively reports to independent monitoring bodies within the Company;

3.      a proposal to strengthen the Board's supervision of the Company's operations, and to develop and implement procedures for greater shareholder input into the policies and guidelines of the Board; and

4.      a provision to permit the shareholders of Avon to nominate at least three candidates for election to the Board;

C.      Awarding to Avon restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the Individual Defendants from the wrongful conduct;

D.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 22, 2013

LAW OFFICES OF CURTIS V. TRINKO, LLP

_____
CURTIS V. TRINKO

JENNIFER E. TRAYSTMAN
C. WILLIAM MARGRABE
16 West 46th Street, 7th Floor
New York, NY 10036
Telephone: (212) 490-9550
Facsimile: (212) 490-9550
ctrinko@trinko.com

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
CRAIG W. SMITH
JENNY L. DIXON
GINA STASSI
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

654160

## VERIFICATION

I, Sylvia Pritika, hereby declare as follows:

I am the plaintiff in the within entitled action. I have read the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: _Nov. 21, 2013_

_Sylvia Pritika_
**SYLVIA PRITIKA**