**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— X   Case No. 13-CV-8369 (PGG)

SYLVIA PRITIKA, Derivatively on Behalf : 
of AVON PRODUCTS, INC., :
                              :

                 Plaintiff, :

       v. :
                              :

ANN S. MOORE, PAULA STERN, :
MARIA ELENA LAGOMASINO, W. DON :
CORNWELL, GARY M. RODKIN, V. :
ANN HAILEY, ANDREA JUNG, SUSAN :
J. KROPF, CHARLES W. CRAMB, :
BENNETT R. GALLINA, FRED HASSAN, :
STANLEY C. GAULT, EDWARD T. :
FOGARTY, LAWRENCE A. WEINBACH, :
and PAUL S. PRESSLER, :
                              :

                 Defendants, :

       -and- :
                              :

AVON PRODUCTS, INC., a New York :
corporation, :
                              :

             Nominal Defendant. :

———————————————————————— X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS THE SHAREHOLDER DERIVATIVE COMPLAINT – NO**
**SUBJECT MATTER JURISDICTION**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ....................................................................1

II.     PERTINENT FACTS ..................................................................................5

III.    PLAINTIFF PROPERLY INVOKES FEDERAL QUESTION JURISDICTION ............7

        A.      Applicable Legal Standards ....................................................7

        B.      The Complaint Actually Raises a Disputed Federal Issue ......................7

        C.      The Federal Issue is Substantial and Significant to the Federal System.................8

        D.      Plaintiff's Claims are Capable of Resolution by this Court Without
                Disrupting the Federal-State Balance ..................................................15

IV.     CONCLUSION..........................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Am. Well Works Co. v Layne & Bowler Co.*,
   241 U.S. 257 (1916)..................................................................................................7

*Bowdrie v. Sun Pharm. Indus. Ltd.*,
   909 F. Supp. 2d 179 (E.D.N.Y. 2012) ............................................................14

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005).............................................................................14

*City of Brockton Retirement System v. Avon Products, Inc.*,
   Civ. A. No. 11 Civ. 4665 (PGG)......................................................................11

*D'Alessio v. N.Y. Stock Exch., Inc.*,
   258 F.3d 93 (2d Cir. 2001)................................................................2, 3, 7, 14

*Donovan v. Rothman*,
   106 F. Supp. 2d 513 (S.D.N.Y. 2000)..............................................................17

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*,
   463 U.S. 1 (1983), *superseded by statute as stated in Ward v. Circus
   Circus Casinos, Inc.*, 473 F.3d 994 (9th Cir. 2007)..........................................7

*Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*,
   2012 WL 252139 (S.D.N.Y. Jan. 25, 2012) .....................................................14

*Gamoran v. Neuberger Berman Mgmt., LLC*,
   2010 WL 4537056 (S.D.N.Y. Nov. 8, 2010).....................................................14

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005)...................................................................................*passim*

*Gunn v. Minton*,
   133 S. Ct. 1059 (2013)...............................................................................*passim*

*Haith ex. Rel. Accretive Health, Inc. v. Bronfman*,
   928 F. Supp. 2d 964 (N.D. Ill. 2013) ...................................................14, 15, 17

*In re Capital One Derivative S'holder Litig.*,
   2012 WL 6725613 (E.D. Va. Dec. 21, 2012) ...................................................14

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   922 F. Supp. 2d 475 (S.D.N.Y. 2013).........................................................13, 14

*In re The Reserve Fund Sec. & Derivative Litig.*,
   2009 WL 3634085 (S.D.N.Y. Nov. 3, 2009).....................................................17

*Lamb v. Phillip Morris, Inc.*,
915 F.2d 1024 (6th Cir. 1990) ..........................................................................9, 16

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006).................................................................................3, 8, 12

*NASDAQ OMX Grp., Inc. v. UBS Sec. LLC*,
2013 WL 3942948 (S.D.N.Y. June 18, 2013) ...................................................14

*Prince v. Berg*,
2011 WL 9103 (N.D. Cal. Jan. 3, 2011) ..........................................................13

*Shields v. Murdoch*,
891 F. Supp. 2d 567 (S.D.N.Y. 2012)..............................................................15

*Smith v. Kansas City Title & Trust Co.*,
255 U.S. 180 (1921)....................................................................................2, 7

*Sung v. Wasserstein*,
415 F. Supp. 2d 393 ...............................................................................16, 17

*United States v. Jensen*,
532 F. Supp. 2d 1187 (N.D. Cal. 2008),
*aff'd in part sub nom. United States v. Reyes*, 577 F.3d 1069 (9th Cir.
2009) ..........................................................................................................9

*West 14th St. Commercial Corp. v. 5 West 14th Owners Corp.*,
815 F.2d 188 (2d Cir. 1987)...........................................................................13

**STATUTES, RULES & OTHER AUTHORITIES**

68 Fed. Reg. 36643 (June 18, 2003) ...................................................................10

15 U.S.C.
§78dd-1 ......................................................................................................5
§78m .........................................................................................................5
§78m(b)(2)(A)...............................................................................................9
§78m(b)(2)(B)...............................................................................................9
§7241 (2002)...........................................................................................4, 10
§7262 (2002)..............................................................................................10

26 U.S.C. §6335 ............................................................................................11

28 U.S.C.
§1331.................................................................................................1, 3, 7, 13
§1338..........................................................................................................2
§1338(a) ....................................................................................................12

2012 Annual Report of the Director: Judicial Business of the United States Courts ...................13

Am. Crim. L. Rev. 359, 423 & n.8 (1988)..................................................................................10

Bus. Law Monographs: Int'l §6.03 (Matthew Bender & Co. 2006) ..............................................10

Final Rule: Management's Reports on Internal Control Over Financial Reporting
    and Certification of Disclosure in Exchange Act Period Reports, SEC
    Release Nos. 33-8238, 34-47986, IC-26068......................................................................10

House of Representatives Report No. 94-831 (1977) (Conf. Rep.)............................................4, 9

Senate Report
    No. 95-114 (1977)..............................................................................................3, 4, 9, 10
    No. 100-85 (1987)........................................................................................................10

## I.      PRELIMINARY STATEMENT

In this shareholder derivative action, plaintiff Sylvia Pritika ("Plaintiff") alleges that the Individual Defendants[1] knowingly or with conscious disregard for their legal and fiduciary duties permitted Avon Products, Inc. ("Avon" or the "Company") to conduct overseas operations in high risk countries without the internal controls and accounting systems necessary to ensure the Company's compliance with the Foreign Corrupt Practices Act ("FCPA").   The Complaint[2] alleges in detail how the Individual Defendants continued to permit the Company to violate the FCPA for several years *after* commencing an internal investigation into potential FCPA violations.   Under 28 U.S.C. §1331, this Court has federal jurisdiction because adjudication of Plaintiff's state law breach of fiduciary duty claims will necessarily require the Court to resolve substantial, disputed questions of federal law, including whether FCPA violations occurred, and, if so, what role the Individual Defendants played in allowing or permitting Avon to violate the FCPA through their failure to ensure the Company had adequate internal controls.   ¶¶13, 48-60.

The four-part inquiry for evaluating whether state law claims trigger federal question jurisdiction under 28 U.S.C. §1331 is well-settled.   Federal jurisdiction is properly invoked where the state law claim turns on a federal issue that is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution without disturbing any congressionally approved balance of federal and state judicial responsibilities.   *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013).   Defendants do not dispute that Plaintiff's claims necessarily raise federal issues that are actually disputed.   *See* Defendants' Memorandum of Law in Support of Motion to Dismiss the

---

[1] "Individual Defendants" refers to Ann S. Moore, Paula Stern, Maria Elena Lagomasino, W. Don Cornwell, Gary M. Rodkin, V. Ann Hailey, Andrea Jung, Susan J. Kropf, Charles W. Cramb, Bennet R. Gallina, Fred Hassan, Stanley C. Gault, Edward T. Fogarty, Lawrence A. Weinbach, and Paul S. Pressler.

[2] Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment ("Complaint"), filed November 22, 2013 (Dkt. 1).   All paragraph references "¶__" or "¶¶__" refers to the Complaint.

Shareholder Derivative Complaint – No Subject Matter Jurisdiction ("Motion" or "Mot.") at 1-2, 9.  Defendants argue, instead, that the U.S. Supreme Court's application of the *Grable* inquiry in *Gunn*, 133 S. Ct. at 1065, shows that this case "does not fall into the 'special and small category' of cases" that satisfy the third and fourth factors because the federal issue underpinning Plaintiff's claims "is neither 'substantial' nor 'capable of resolution … without disrupting the federal-state balance approved by Congress.'"  Mot. at 1.

Defendants' Motion relies on *dicta* and ignores important differences in *Gunn's* facts and holding that distinguish it from the present case.  *Gunn* involved a unique set of circumstances. A plaintiff, dissatisfied with the state trial court's ruling on his legal malpractice claim, argued for the first time on appeal that, under 28 U.S.C. §1338, the federal courts had *exclusive* jurisdiction over his state law claim because his former attorneys had committed malpractice in a patent case.  Not surprisingly, the Supreme Court rejected this gamesmanship, and held that "state legal malpractice claims based on underlying patent matters will rarely, if ever, arise under federal patent law" because, among other reasons, there is no possibility that a state court's ruling on a purely hypothetical patent law question for purposes of determining causation on a malpractice claim will ever have substantial implications for the federal system.  *Gunn*, 133 S. Ct. at 1067-68.

*Gunn* does not alter nearly 100 years of precedent holding that state law causes of action arise under federal law for jurisdictional purposes where federal law is "directly drawn in question" by those claims.  *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201 (1921) (federal jurisdiction proper where shareholder argued the securities were invalid because issued under an unconstitutional law).  The U.S. Court of Appeals for the Second Circuit has long abided by this principle, holding consistently that the doors of the federal courts must not be closed to litigants whose state law "claims necessarily require a court to construe … federal law." *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 104 (2d Cir. 2001) (state law claims "rooted in violations of federal law [] favor a finding that federal question jurisdiction exists.")  This body

of law effectuates the intent underlying 28 U.S.C. §1331 that a case "arises under" federal law where the "federal interest underlying [plaintiff's] claims is sufficiently substantial." *Id.* at 104.

The present case falls comfortably within the range of cases described by the Supreme Court in *Grable*, as ones in which state law claims "implicate significant federal issues" and give rise to federal jurisdiction to vindicate "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. Unlike in *Gunn*, where it was absolutely clear that a decision on the patent law question would be purely hypothetical and have virtually no influence against the backdrop of hundreds of years of federal patent law jurisprudence, a decision on the FCPA questions presented here could be among the first authoritative statements by any court regarding the statute. Despite a recent increase in enforcement activity by federal regulators, there is little if any decisional law construing the FCPA because the federal courts have been presented so few opportunities to address it.

The federal interest in having federal courts be the first to rule on FCPA questions is clearly substantial. Such a statement of law would impact an area deemed by Congress to be of the greatest importance to the federal system. The Supreme Court has long recognized that "[t]he magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated," *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006), and the FCPA is a central part of Congress's national regulatory scheme for securities trading. Congress enacted the FCPA out of recognition that bribery of foreign officials poses a serious threat to the efficient operation and integrity of the nation's capital markets. After the U.S. Securities and Exchange Commission ("SEC") unearthed widespread and undisclosed "questionable or illegal corporate payments" made by over 400 issuers, Congress observed that this conduct "represented a serious breach in the operation of the Commission's system of corporate disclosure and, correspondingly, in public confidence in the integrity of the system of capital formation." Senate Report ("S. Rep.") No. 95-114, at 2 (1977),

*reprinted in* 1977 U.S.C.C.A.N. 4098, 4099; *see also* House of Representatives Report ("H.R. Rep.") No. 94-831 (1977) (Conf. Rep.).  Congress enacted the FCPA because "[c]onfidence in the financial integrity of our corporations has been impaired.  The efficient functioning of our capital markets [has] been hampered."  S. Rep. No. 95-114, at 3; *see also* H.R. Rep. No. 95-640, at 4.  Codified in the Securities Exchange Act of 1934 ("Exchange Act"), the FCPA prohibits bribery and "imposes affirmative requirements on issuers to maintain books and records which accurately and fairly reflect the transactions of the corporation and to design an adequate system of internal controls to assure ... [p]ublic confidence in securities markets will be enhanced by assurance that corporate recordkeeping is honest."  S. Rep. No. 95-114, at 3.  In Sections 302 and 404 of the Sarbanes-Oxley Act of 2002 ("SOX"), Congress again recognized the importance of the FCPA to the federal system, requiring corporate officers to assess and certify the effectiveness of internal controls designed to prevent FCPA violations.  15 U.S.C. §7241 (2002).  The importance to the federal system of ensuring that federal courts develop the body of law construing the FCPA cannot be overstated.

The same cannot be said for "preserving" the traditional role state courts once played in adjudicating state-law based shareholder derivative claims.  Exercising federal question jurisdiction here would not disrupt the ordinary allocation of state and federal responsibilities in any meaningful way.  Federal courts routinely adjudicate shareholder derivative claims, often at the insistence of corporate nominal defendants.  Their competence to do so is widely recognized by the state courts themselves, which frequently cite leading federal opinions.  A decision that federal question jurisdiction is appropriately extended at this point in time to cases necessarily requiring decisions about FCPA matters would not substantially affect the allocation of responsibilities between state and federal courts.

The exercise of federal jurisdiction is entirely appropriate here, and Defendants' motion should be denied.

## II.    PERTINENT FACTS[3]

Avon is a global manufacturer and distributor of products in the beauty, fashion, and home categories, and conducts business in over 140 countries.  ¶¶2, 17, 45.  Avon's sales operations outside of the U.S. accounted for 86% of its consolidated revenue in 2012.  ¶17.  Many countries in which Avon does business have less developed legal and regulatory frameworks, and business and political cultures in which requests for bribes and other improper payments are prevalent (so-called, "high risk countries").  ¶¶3, 45.

As a public company listed in the United States, Avon is subject to the FCPA's anti-bribery and accounting provisions, which require corporations to (1) make and keep books, records and accounts, which, in reasonable detail, accurately and fairly reflect the corporation's transactions, and (2) devise and maintain a system of effective internal accounting controls.  ¶¶46-47 (describing 15 U.S.C. §78dd-1 (anti-bribery provisions), §78m (accounting or "Books and Records" provisions); *see also* ¶¶3, 4.  The Individual Defendants, current and former directors and officers of Avon (¶¶18-32), knew that Avon was subject to the FCPA, that Avon was required to implement a system of internal controls sufficient to prevent bribes and unlawful payments by its agents and employees, and to make and keep books, records, and accounts in accordance with 15 U.S.C. §78m.  ¶¶18-32.  The Individual Defendants were required to devise and maintain a system of internal controls sufficient to ensure Avon's substantial compliance with the FCPA's anti-bribery and Books and Records provisions, and to certify their effectiveness in SEC filings.  ¶35.  This was particularly critical given the Company's extensive operations in high risk countries.

---

[3] Defendants present a lengthy, self-serving characterization of facts taken from the Complaint and public filings, much of which is irrelevant for purposes of this motion.  Plaintiff disputes Defendants' mischaracterization but, in keeping with the parties' stipulation to brief first the limited issue of whether federal subject matter jurisdiction exists, so ordered by the Court (Dkt. 21), will limit her discussion to the relevant facts.  Plaintiff reserves the right to address this in connection with the future briefing on Defendants' other grounds for dismissal.

During the relevant period, Avon utterly lacked effective controls to ensure Avon's compliance with the FCPA, and even after an internal inquiry uncovered widespread FCPA violations in 2008, the Individual Defendants continued to allow Avon's employees to engage in widespread illegal business practices in violation of the FCPA until at least 2010.  ¶60.

In October 2008, Avon broke the news that "it [was] voluntarily conducting an internal investigation of its China operations, focusing on compliance with the [FCPA]," and had voluntarily contacted the SEC and U.S. Department of Justice ("DOJ").  ¶¶5, 50.  The Company's investigation had begun four months earlier when an allegation surfaced in the form of a letter to then-CEO Jung that "certain travel, entertainment and other expenses" were incurred in its China operations.  ¶¶50, 54, 55.

In 2009, Avon expanded its internal investigation to address widespread violations in several "additional countries."  ¶51.  In 2010, Avon described its purported investigation as focused on "reviewing certain expenses and books and records processes, including, but not limited to, travel, entertainment, gifts, and payments to third party agents and others, in connection with our business dealings, directly or indirectly, with foreign governments and their employees" (¶52), and disclosed that it now extended to "markets representing each of [the Company's] four international business units outside of China."  ¶53.

In mid-2013, Avon disclosed it had made an offer of settlement to the DOJ and SEC in June 2013, which was rejected.  ¶¶58-59.  Avon proceeded to establish a reserve of $89 million to cover the potential costs of settling the matter and reports that "the total aggregate amount of any potential settlements with the government could exceed this accrual by up to approximately $43 million."  Declaration William J. Martin dated March 7, 2014 in Support of Defendants' Motion Defendants' Motion to Dismiss the Shareholder Derivative Complaint, Exhibit 18 at 11.  Avon has already incurred over $338 million in legal and investigative costs.  ¶¶61, 92.  The government's investigation continues.  ¶¶58-59.

III.     **PLAINTIFF PROPERLY INVOKES FEDERAL QUESTION JURISDICTION**

   A.     **Applicable Legal Standards**

   A district court has original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. §1331.  "Arising under" jurisdiction "captures the common sense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law …."  *Grable*, 545 U.S. at 312-14.  Where a federal law is "directly drawn in question," an action may arise under federal law even if only state law claims are alleged.  *Smith*, 255 U.S. at 201, 215 (rejecting black-and-white test, championed by Justice Holmes in *Am. Well Works Co. v Layne & Bowler Co.*, 241 U.S. 257 (1916), that would to deny federal jurisdiction to any claims other than those created by federal law); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8-9 (1983), *superseded by statute as stated in Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994 (9th Cir. 2007) (the existence of federal question jurisdiction depends upon whether "vindication of [the] right[s] under state law necessarily turn[s] on some construction of federal law"); *D'Alessio*, 258 F.3d at 100.

   The Supreme Court has declined to state a "single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims."  *Grable*, 545 U.S. at 314 (internal quotes omitted).  The appropriate inquiry is: "[D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id.  Grable* reaffirmed "the contextual enquiry that had been *Smith*'s hallmark for over 60 years," and that federal question jurisdiction continues "over state-law claims that implicate significant federal issues."  *Id.* at 312; *Smith*, 255 U.S. at 180.

   B.     **The Complaint Actually Raises a Disputed Federal Issue**

   The Complaint alleges state law claims for breach of fiduciary duty, waste of corporate assets, and unjust enrichment that are rooted in the FCPA violations.  ¶¶85-88.  The Individual Defendants' breached their fiduciary duties by failing to implement and maintain the internal

controls and accounting systems necessary for Avon to ensure its employees' and agents' substantial compliance with the FCPA, i.e., a system of controls that would detect and prevent the kind of systematic and widespread FCPA violations Avon used in its highest risk markets overseas. ¶¶60, 85-88. They further breached their duties by continuing to permit widespread FCPA violations at least until 2010, well after an internal investigation, commenced in 2008, uncovered the lack of effective controls and the global footprint of the Company's violations. ¶¶51, 60; Complaint, Exhibit A at 2. The corporate waste Plaintiff alleges stems from both the illicit payments and bribes the Company made in violation of the FCPA, and the damages caused by the FCPA violations, including $338 million in legal costs and related expenses, as well as any penalties the Company will pay to resolve its FCPA violations. ¶92. The unjust enrichment arises from the Individual Defendants' receipt of compensation during the timeframe in which they permitted systematic FCPA violations and failed to erect an effective system of internal FCPA controls. ¶97. To prevail on any of her three state law claims, Plaintiff will need to establish that Avon violated both the anti-bribery and Books and Records provisions of the FCPA. ¶¶48-60. Defendants do not, and cannot reasonably, dispute that Plaintiff's state law claims actually raise a disputed federal issue, satisfying the first and second factors of the inquiry *Grable* requires.

### C. The Federal Issue is Substantial and Significant to the Federal System

Defendants contend that the federal questions on which Plaintiff's three state law claims depend – whether Avon violated the anti-bribery and Books and Records provisions of the FCPA – are "not 'substantial' in the relevant sense of being significant 'to the federal system as a whole.'" Mot. at 9. Defendants' assertion that the implications of a state court decision on these questions "would be confined to the parties and issues in this action" (Mot. at 11) ignores the central role of the FCPA in Congress's federal regulatory scheme for the national securities markets, a system of indisputable importance to the federal system, *see Merrill Lynch*, 547 U.S. at 78, and the absence of authoritative federal decisional law construing the FCPA.

"The impetus behind the enactment of the FCPA … was evidence that American corporations were bribing foreign government officials. … Congress received evidence that corporations were concealing 'questionable or illegal corporate payments' and failing to disclose such payments on their books, thereby degrading 'public confidence in the integrity of the system of capital formation.'" *United States v. Jensen*, 532 F. Supp. 2d 1187, 1198-99 (N.D. Cal. 2008) *aff'd in part sub nom. United States v. Reyes*, 577 F.3d 1069 (9th Cir. 2009) (citing S. Rep. No. 95-114, at 1-2). Congress intended for the FCPA, an amendment to the Exchange Act, to addresses behavior that erodes public confidence in the integrity of the free market system. H.R. Rep. No. 95-640, at 4. *See also Lamb v. Phillip Morris, Inc.*, 915 F.2d 1024, 1028 (6th Cir. 1990) (the "FCPA represents a legislative endeavor to promote confidence in international trading relationships and domestic markets" and "the authorization of stringent criminal penalties amplifies the foreign policy and law enforcement considerations underlying the FCPA"). Congress charged the SEC and the DOJ with civil and criminal FCPA enforcement, respectively. *See* H.R. Rep. No. 95-640, at 9; S. Rep. No. 95-114, at 11-12.

In addition to the anti-bribery provision, the FCPA contains the Books and Records provision that mandates issuers "devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that," among other things, transactions are recorded in conformity with GAAP (15 U.S.C. §78m(b)(2)(B)) and imposes affirmative requirements on issuers to maintain books and records which accurately and fairly reflect the transaction of the corporation. 15 U.S.C. §78m(b)(2)(A). Congress believed that public confidence would be enhanced "by assurance that corporate recordkeeping is honest." S. Rep. No. 95-114, at 7. The purpose of the Books and Records provision is not merely to ensure accurate SEC public filings, but to reassure investors that, at the least, all books and records reflecting the economic events

and activities of the corporation were accurate and honest.[4]  *See* Bus. Law Monographs: Int'l §6.03 (Matthew Bender & Co. 2006).

Since the passage of SOX, the FCPA's Books and Records provisions have assumed even greater importance.  Officers now are required to certify the integrity of their companies' financial statements and assess and confirm the adequacy of internal controls.  SOX §302, 15 U.S.C. §7241 (2002) (requiring management certification of accuracy and fairness of financial reports and adequacy of internal controls); *id.* §404, 15 U.S.C. §7262 (2002) (authorizing the SEC to prescribe regulations requiring management to assess internal control structures for financial reporting); Final Rule: Management's Reports on Internal Control Over Financial Reporting and Certification of Disclosure in Exchange Act Period Reports, SEC Release Nos. 33-8238, 34-47986, IC-26068, 68 Fed. Reg. 36643 (June 18, 2003) (promulgating final rule). Notably, the FCPA does not specifically detail procedures to be used or internal controls to be implemented.  Instead, it prescribes a "reasonableness" or prudent person standard for assessing adequacy of issuers' practices.  Thus, from the outset, much ambiguity has surrounded such provisions, which has been a source of concern.  S. Rep. No. 100-85, at 50 (1987).

Despite its centrality to issues of importance to the federal system, the body of federal case law interpreting the FCPA is quite small.  The federal courts simply have not had much opportunity to construe and apply the statute because the federal agencies tasked with enforcement have tended to resolve FCPA violations short of litigation.[5]  For example, a review

_____

[4] The SEC Staff confirms that the FCPA's internal-controls provisions are intended to protect the general integrity of financial statements.  *Update, White Collar Crime: Survey of Law*, 25 Am. Crim. L. Rev. 359, 423 & n.8 (1988) (citing an address by Gary Lynch, Director of the Division of Enforcement).

[5]  As explained in the FCPA Resource Guide, publicly available at http://www.justice.gov/criminal/fraud/fcpa/guide.pdf, the DOJ typically resolves its criminal investigations into FCPA violations through plea agreements, deferred prosecution agreements, non-prosecution agreements, or declinations.  The SEC uses similar mechanisms to resolve its civil investigations into FCPA violations, including civil injunctive actions to obtain court orders compelling the defendant to obey the law in the future or administrative cease and desist orders.

of the SEC's FCPA enforcement actions showcased on the SEC's website, http://www.sec.gov/spotlight/fcpa/fcpa-cases.shtml, illustrates that virtually all of the actions identified were resolved either concurrent with the filing of the action or settled shortly thereafter and did not entail litigation on the merits. *See also* http://www.justice.gov/criminal/fraud/fcpa/cases/a.html (link to DOJ FCPA enforcement proceedings). Under these circumstances, the federal interest in affording federal courts every opportunity to issue the first authoritative statements about this important federal law is even more substantial.[6]

The Supreme Court's decision in *Grable* fully supports the exercise of federal question jurisdiction here. *Grable* involved the seizure and sale of real property to satisfy a tax deficiency. The IRS gave petitioner notice by certified mail before selling the property to respondent. *Grable*, 545 U.S. at 310. Petitioner later brought a quiet title action in state court, claiming respondent's title to the property was invalid because 26 U.S.C. §6335 required the IRS to give petitioner notice by personal service, not certified mail. *Id.* at 311. Respondent removed the case to district court on the grounds that the interpretation of the notice statute presented a federal question. *Id.* The Supreme Court applied the four-part inquiry and held the case warranted federal jurisdiction because whether petitioner was given notice within the meaning of the federal statute was an essential element of the state law claim and "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." *Id.* at 315.

*Gunn* does not alter or redirect the *Grable* inquiry, as Defendants suggest. 133 S. Ct. at 1065 (recognizing *Grable* inquiry brought order to the "arising under" jurisprudence). In *Gunn*,

---

[6] A federal securities class action against Avon and certain officers that turns on substantially the same facts and events, including the FCPA violations, is currently pending before this Court. *See City of Brockton Retirement System v. Avon Products, Inc. et al.*, Civ. A. No. 11 Civ. 4665 (PGG), filed Mar. 16, 2012. The federal system's interest is further served by ensuring an efficient and consistent application of the FCPA to the securities class action and this derivative action.

the patent law question was relevant only to the "hypothetical case within a case" causation inquiry in a legal malpractice action (i.e., that but-for the attorney's negligence, the client would have won the hypothetical patent case), and so would have virtually no precedential impact beyond that case, especially against the backdrop of hundreds of years of federal case law addressing virtually every aspect of patent law.  *Id.* at 1061 (internal quotes omitted).  In that sense, the case was "poles apart from *Grable*."  *Id.* at 1067.  The Supreme Court in *Gunn* was addressing the gamesmanship of a disgruntled client who had first sued his former patent attorneys in state court for malpractice, and then, after receiving an unfavorable ruling, argued for the first time on appeal that the state court's disposition was not controlling because federal courts had exclusive jurisdiction over malpractice claims under 28 U.S.C. §1338(a), which provides for exclusive federal jurisdiction for cases relating to patents.  *Id.* at 1063.  Not surprisingly, the Supreme Court rejected this gambit, holding that "state legal malpractice claims based on underlying patent matters will rarely, if ever, arise under federal patent law for purposes of §1338(a)."  *Id.* at 1065.

 This case stands in marked contrast to *Gunn*.  Plaintiff's state law claims are rooted in the alleged FCPA violations.  Plaintiff will need to prove that Avon violated the FCPA in order to prevail on her state law claims.  The FCPA questions are of substantial importance to the federal system because the statute serves to regulate and ensure the integrity of the market by prohibiting corruption and bribery by publicly traded issuers, and requiring issuers to have the necessary internal controls.  Congress has repeatedly stated that the goal of the FCPA, and the related officer certifications required under SOX, is to assure investors of the integrity of publicly traded companies and the marketplace as a whole, and the Supreme Court has recognized "[t]he magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated."  *Merrill Lynch*, 547 U.S. at 78.  Unlike

patent law[7], federal courts have had very little occasion to authoritatively address FCPA issues and there is little federal case law. Here, the federal interest in affording federal courts every opportunity to develop federal decisional law in this area of substantial importance to the federal system is quite significant.

Defendants' contention that pre-*Gunn* cases are of limited value presumes that *Gunn* changed the law or re-focused the inquiry. Mot. at 12. It did not. In *Gunn*, the Supreme Court explained that "to bring some order to this unruly doctrine … we condensed our prior cases into the [*Grable*] inquiry" and went on to apply that inquiry to the facts at hand. *Gunn*, 133 S.Ct. at 1065. The pre-*Gunn* cases decided by leading federal courts properly apply *Grable* in a manner entirely consistent with *Gunn* and support the exercise of federal jurisdiction here. *See Prince v. Berg*, 2011 WL 9103 (N.D. Cal. Jan. 3, 2011); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 475, 485 (S.D.N.Y. 2013). In *Prince*, a shareholder derivative action, the court analyzed the *Grable* factors on plaintiff's motion to remand and found federal jurisdiction appropriate where the state law claims for breach of fiduciary duty and abuse of control depended on whether or not there were violations of the False Claims Act.[8] 2011 WL

---

[7] Thousands of patent cases are filed and resolved by federal courts annually, creating a wealth of decisional law to guide state courts. *See* 2012 Annual Report of the Director: Judicial Business of the United States Courts, Tables C-2, C-2A (4,015 and 5,189 patent cases commenced in 2011 and 2012, respectively); Table C-4 (4,042 patent cases terminated during 12-month period ending Sept. 30, 2012, court action taken in 2,913 of these patent cases), publicly                                available                                at http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2012/appendices/USDistrictCourts Civil.pdf.

[8] Contrary to Defendants' contention, Mot. at 13, federal jurisdiction in *Prince* did not hinge on existence of a private right of action under the False Claims Act. *Grable* made clear that "the absence of a federal private right of action" is "evidence relevant to, but not dispositive of, the sensitive judgments about congressional intent that §1331 requires." 545 U.S. at 318 (internal quotes omitted). *See also West 14th St. Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987) ("[A]ssuming that plaintiffs have no private right of action under [the Co-op Abuse Relief Act], we conclude that the federal elements in plaintiffs' state cause of action would still be sufficiently substantial to confer arising under jurisdiction."). Contrary to Defendants assertion, the absence of a private right of action is not determinative of the third and fourth elements of *Grable*. Mot. at 15-16.

9103, at *3.  In *Facebook*, the court also accepted jurisdiction over state law claims brought against national securities exchanges.  Over plaintiffs' objection, the court determined that the state law claims raised substantial federal questions because they required construction of duties imposed under the rules and regulations promulgated pursuant to the Exchange Act.[9]  922 F. Supp. 2d at 481-82.

Defendants' reliance on *Haith ex. Rel. Accretive Health, Inc. v. Bronfman*, 928 F. Supp. 2d 964 (N.D. Ill. 2013), a post-*Gunn* decision from the U.S. District Court for the Northern District of Illinois, on the question of substantiality is misplaced.  *See* Mot. at 10-11.  *Haith* is distinguishable and offers little helpful guidance for the Court's decision, here.  The district court in *Haith* did not conduct a thorough analysis of the relative importance of the federal questions raised by the plaintiff's state law claims (including the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the Health Information Technology for Economic and Clinical Health Act ("HITECH") issues), a necessary step to determine substantiality under *Grable*.  928 F. Supp. 2d at 970-71.  The *Haith* court was too quick to draw an analogy between

---

[9] A multitude of courts have found federal jurisdiction appropriate in such circumstances.  *See D'Alessio*, 258 F.3d at 103 (former broker's state law claims against New York Stock Exchange (NYSE) alleging violations of NYSE rules found to raise a federal issue warranting jurisdiction); *NASDAQ OMX Grp., Inc. v. UBS Sec. LLC*, 2013 WL 3942948, at *12 (S.D.N.Y. June 18, 2013) (citing *D'Alessio*) (noting presence of substantial federal concerns when the interpretation and application of SEC-approved rules and duties were required).  *See also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194-95 (2d Cir. 2005) (affirming federal jurisdiction where federal issues "involve aspects of the complex federal regulatory scheme applicable to cable television rates, as to which there is 'a serious federal interest in claiming the advantages thought to be inherent in a federal forum'") (quoting *Grable*, 545 U.S. at 313); *In re Capital One Derivative S'holder Litig.*, 2012 WL 6725613, at *1 (E.D. Va. Dec. 21, 2012) (denying motion to remand because disposition of plaintiffs' state derivative claims necessarily depends on resolution of disputed and substantial questions of federal law); *Gamoran v. Neuberger Berman Mgmt., LLC*, 2010 WL 4537056, at *5 (S.D.N.Y. Nov. 8, 2010) (finding removal proper where plaintiff's derivative state common law claim turned on necessary and dispositive federal issue); *Bowdrie v. Sun Pharm. Indus. Ltd.*, 909 F. Supp. 2d 179, 184 (E.D.N.Y. 2012) (denying remand because "while Plaintiffs' causes of action arise under state law, resolving them necessarily raises a federal question"); *Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 2012 WL 252139, at *2-3 (S.D.N.Y. Jan. 25, 2012) (finding removal proper where, for purposes of a breach of fiduciary duty claim, federal law defined the duty allegedly breached, and exercising supplemental jurisdiction over derivative claim).

the shareholder's derivative claims and *Gunn's* malpractice claim (*id*. at 971-72), where it was absolutely clear that a hypothetical decision on the patent issue for purposes of adjudicating causation on the legal malpractice claim would have no effect on the federal system, particularly against the backdrop of well-developed federal patent law jurisprudence.[10]  Nothing in *Haith* calls into question the conclusion that Plaintiff's claims necessarily require resolution of questions under the FCPA – an area of undisputable significance to the federal system and an area of law in which the federal courts should avail themselves of every opportunity to develop and clarify the law.

> **D.      Plaintiff's Claims are Capable of Resolution by this Court Without Disrupting the Federal-State Balance**

Defendants' assertion that accepting jurisdiction here "would eviscerate that long-established [federal-state] balance" purportedly reserving to state courts decisions about the application of equitable principles and state law to breach of fiduciary duty claims against corporate officers and directors is wildly overblown.  Mot. at 14.  A finding of federal jurisdiction here does no violence to the ordinary allocation of state and federal responsibilities for shareholder derivative actions.  State courts have no special competence or exclusive interest in developing the law in this area.  Federal courts routinely hear shareholder derivative actions involving state law claims, and their competence in this area is broadly recognized.  If the Court were to accept Defendants' premise that federal jurisdiction is not warranted because "directors' duties are created by state common law, not federal law" (Mot. at 14), no shareholder derivative suit could proceed in federal court, a result that cannot be supported.  *See, e.g.*, *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577-78 (S.D.N.Y. 2012) (rejecting defendants' request for

---

[10] *Haith's* analysis would lead federal courts to decline to exercise federal question jurisdiction over any shareholder derivative case, without any assessment of the significance of the federal questions actually raised, a result not supported by the holding or any analysis in *Gunn* and a major departure from decades of federal "arising under" jurisprudence.

abstention in favor of state derivative actions).

Moreover, the circumstances that call for the exercise of federal jurisdiction here are limited and would not broadly impact on the general allocation of derivative actions in our federal system.  Until federal decisional law on the FCPA is better developed, the federal interest in permitting federal courts to exercise jurisdiction over derivative actions that require decisions on FCPA questions is paramount.[11]

Defendants' contention that the assertion of federal jurisdiction would disrupt the federal-state balance because the FCPA does not afford a private right of action is rejected by their own authority.  In *Sung v. Wasserstein*, U.S. District Judge Victor Marrero explained that the existence of federal right of action "is neither necessary nor sufficient to confer jurisdiction in all circumstances":

> [T]he Second Circuit has found that the presence of federal issues in a complaint on its face solely based on state law may be sufficiently substantial even when the plaintiff has not invoked nor would otherwise independently have a federal right of action.  This guidance suggests that the incorporation of a federal law as a standard of conduct in a state claim, whether explicitly or implicitly, is merely a subset of the possible ways federal law may be at issue in a state-created action.

415 F. Supp. 2d 393, 398 (S.D.N.Y. 2006) (internal citations omitted).

-------

[11] While the State of New York has an interest in regulating its corporations, that interest does not trump the federal system's substantial interest in addressing violations of the FCPA.  Simply put, "[r]egulation of bribery directed at foreign officials cannot be characterized as a matter traditionally relegated to state control."  *Lamb*, 915 F.2d at 1029-30.  Unlike *Gunn*, where the state had a substantial interest in regulating attorneys practicing there, *and* the federal patent issue could be resolved by a state court's reference to the well-established body of federal patent law, here, no such body of FCPA law exists to guide state court's interpretation of the FCPA.  By contrast, federal courts are already called upon to apply state law to determine directors' duties.  The federal system also has significant interests in establishing the standards under which violations of federal statute will lie to ensure consistency for all issuer corporations, irrespective of state of incorporation, as well as any civil or criminal proceedings brought by SEC and DOJ.

*Grable's* fourth element affords no basis for declining to exercise federal jurisdiction here.[12]

## IV.    CONCLUSION

For these reasons, Defendants' motion to dismiss for no subject matter jurisdiction should be denied.

Respectfully submitted,

Dated: April 11, 2014                    ROBBINS ARROYO LLP

/s/ Jenny L. Dixon
JENNY L. DIXON

BRIAN J. ROBBINS
CRAIG W. SMITH
JENNY L. DIXON
GINA STASSI
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
Email: brobbins@robbinsarroyo.com
csmith@robbinsarroyo.com,
jdixon@robbinsarroyo.com,
gstassi@robbinsarroyo.com

---

[12] Defendants' cases are inapposite.  Mot. at 14-15.  The alleged federal interest in *Haith* does not satisfy the first and second elements of *Grable*, which makes the court's analysis of the fourth element of little import here given Plaintiff's claims satisfy the first three.  In *Donovan v. Rothman*, 106 F. Supp. 2d 513, 518 (S.D.N.Y. 2000), decided pre-*Grable*, the court remanded the case after determining that any federal interest implicated by plaintiffs' state law claims was "too insubstantial to support federal question jurisdiction."  There was simply no analysis of the potential disruption to the federal-state balance given that substantiality was not met.  In *Sung*, 415 F. Supp. 2d at 393, the court remanded the case after finding an insufficient federal interest in state law claims for misleading shareholders through statements in IPO documents.  In *In re The Reserve Fund Sec. & Derivative Litig.*, 2009 WL 3634085, at *5 (S.D.N.Y. Nov. 3, 2009), the Court remanded the case where defendants failed to demonstrate that the "state law claims contain[ed] distinct allegations of federal law violations."

LAW OFFICES OF CURTIS V. TRINKO, LLP
CURTIS V. TRINKO
JENNIFER E. TRAYSTMAN
C. WILLIAM MARGRABE
16 West 46th Street, 7th Floor
New York, NY 10036
Telephone: (212) 490-9550
Facsimile: (212) 490-0158
Email: ctrinko@trinko.com,
jtraystman@trinko.com,
wmargrabe@trinko.com

*Attorneys for Plaintiff Sylvia Pritika*

939778

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 11, 2014, a copy of the foregoing document was served to the e-mail addresses denoted on the Electronic Mail Notice List.

/s/ Jenny L. Dixon

JENNY L. DIXON
