USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/16/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SYLVIA PRITIKA, Derivatively on Behalf of AVON PRODUCTS, INC.,

    Plaintiff,

- against -

ANN S. MOORE, PAULA STERN, MARIA ELENA LAGOMASINO, W. DON CORNWELL, GARY M. RODKIN, V. ANN HAILEY, ANDREA JUNG, SUSAN J. KROPF, CHARLES W. CRAMB, BENNETT R. GALLINA, FRED HASSAN, STANLEY C. GAULT, EDWARD T. FOGARTY, LAWRENCE A. WEINBACH, and PAUL S. PRESSLER,

    Defendants,

- and -

AVON PRODUCTS, INC., a New York corporation,

    Nominal Defendant.

**MEMORANDUM OPINION & ORDER**

13 Civ. 8369 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

    Plaintiff Sylvia Pritika brings this action – derivatively on behalf of Nominal Defendant Avon Products, Inc. ("Avon") – against Defendants Ann S. Moore, Paula Stern, Maria Elena Lagomasino, W. Don Cornwell, Gary M Rodkin, V. Ann Hailey, Andrea Jung, Susan J. Kropf, Charles W. Cramb, Bennet R. Gallina, Fred Hassan, Stanley C. Gault, Edward T. Fogarty, Lawrence A. Weinbach, and Paul S. Pressler. Plaintiff alleges that Defendants breached their fiduciary duties to Avon, wasted corporate assets, and were unjustly enriched by causing or permitting Avon to violate the Foreign Corrupt Practices Act of 1977 ("FCPA" or the "Act"). (Cmplt. (Dkt. No. 1)) Plaintiff asserts that this Court has subject matter jurisdiction under 28

U.S.C. § 1331, because her claims "are dependent on the resolution of substantial questions of federal law." (Cmplt. (Dkt. No. 1) ¶ 13) Defendants have moved to dismiss for lack of subject matter jurisdiction. (Dkt. No. 27) For the reasons stated below, Defendants' motion to dismiss will be granted.

## BACKGROUND

### I.     FACTUAL BACKGROUND[1]

Avon is a global manufacturer and distributor of beauty, household, and personal care products. (Cmplt. (Dkt. No. 1) ¶ 2) Avon does business primarily through direct sales to consumers, via a network of more than six million independent sales representatives. (Id.) These representatives sell Avon products in over 140 countries, including a number in which it is common to pay bribes and kickbacks to government officials in exchange for favorable treatment. (Id. ¶ 3)

The FCPA prohibits Avon from making such payments, and the Act requires companies such as Avon to follow certain accounting procedures designed to discourage, deter, or lead to the disclosure of such practices. See 15 U.S.C. §§ 78dd-1, et seq.; Cmplt. (Dkt. No. 1) ¶ 4. Companies must (1) "make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the [company]," and (2) "devise and maintain a [sufficient] system of internal accounting controls[.]" 15 U.S.C. § 78m(b)(2)(A) and (B). Failure to comply with the provisions of the FCPA can result in civil enforcement actions brought by the Securities and Exchange Commission ("SEC"), or civil or criminal enforcement actions brought by the Department of Justice ("DOJ"). See Complt. (Dkt. No. 1) ¶¶ 4, 5. There is, however, no private right of action

---

[1] The Court's factual statement is drawn from the Complaint. (Dkt. No. 1)

under the Act. See Lamb v. Phillip Morris, Inc., 915 F.2d 1024, 1027-1030 (6th Cir. 1990) (no private right of action under the FCPA).

In October 2008, Avon disclosed that it had commenced an internal investigation of its China operations, with a focus on FCPA compliance. (Cmplt. (Dkt. No. 1) ¶ 5) Avon voluntarily reported the investigation to the SEC and the DOJ. (Id. ¶¶ 5, 50) In 2009, the Company announced that its internal investigation had grown to include the Company's operations in Brazil, Mexico, Argentina, India, and Japan. (Id. ¶¶ 5, 51) In 2010, Avon's SEC filings revealed that the internal investigation was ongoing and that the potential consequences to the Company – in the form of fines and other sanctions – were serious. (Id. ¶ 52)

At some point after Avon announced its internal investigation, the DOJ and the SEC began their own investigations into whether Avon had violated the FCPA. See id. ¶ 59. In October 2013, Avon disclosed that it had made an offer of settlement to the DOJ and the SEC to resolve their FCPA investigations, but that both agencies had rejected Avon's settlement proposal. (Id. ¶¶ 58-59) Avon disclosed at that time that the SEC sought fines significantly higher than the $12 million that Avon had proposed. (Id. ¶ 59) As of the date the Complaint was filed, Avon had still not resolved the DOJ and SEC investigations. (Id. ¶ 61)

Separate and apart from any financial penalties that Avon may face as part of a settlement with government agencies, the Company has already incurred significant costs in connection with the FCPA investigations. (Id.) Indeed, the Company has spent at least $338 million in connection with legal fees and related expenses. (Id.)

Plaintiff's claims in this shareholder derivative action stem from Avon's alleged lack of compliance with the FCPA, and the significant costs that have resulted from Avon's FCPA violations and accounting deficiencies. Plaintiff alleges that "[t]he Individual Defendants

. . . allowed Avon to operate [overseas] without implementing and maintaining internal controls and accounting systems" as required by the FCPA, and thereby "breache[d] [their] fiduciary duties, waste[d] corporate assets, and [were] unjust[ly] enrich[ed]." (Id. ¶¶ 1, 3) Although all of Plaintiff's claims – breach of fiduciary duty, waste of corporate assets, and unjust enrichment – are brought under New York law, these claims are predicated on the assertion that Defendants caused or permitted Avon to violate the FCPA. See id. ¶ 86 (as to fiduciary duty claim, the "Defendants breached their duty of loyalty by knowingly, recklessly, or with gross negligence allowing the Company to violate the FCPA by failing to implement and maintain an adequate system of internal controls"); id. ¶ 92 (as to the corporate waste claim, Avon has suffered "damages arising from the Individual Defendants' failure to cause Avon to implement internal controls to ensure compliance with the FCPA"); id. ¶ 97 ("The Individual Defendants were unjustly enriched as a result of the compensation they received while breaching the[] fiduciary duties [they] owed to Avon" to ensure that the Company complied with the FCPA.).

## II. PROCEDURAL BACKGROUND

Plaintiff filed this action on November 22, 2013. (Cmplt. (Dkt. No. 1)) The Complaint asserts that this Court has subject matter jurisdiction pursuant to "28 U.S.C. § 1331 because [P]laintiff's state law claims are dependent on the resolution of substantial questions of federal law." (Id. ¶ 13)

After Defendants stated that they wished to file a motion to dismiss, this Court approved the parties' proposal that the question of subject matter jurisdiction be addressed in an initial round of briefing. (Dkt. No. 21) Should the Court conclude that it has subject matter jurisdiction, the parties will then make additional submissions concerning the remaining grounds for Defendants' motion. (Id.)

Defendants' motion to dismiss for lack of subject matter jurisdiction is now fully briefed. See Dkt. Nos. 27, 28, 30, 31. The critical issue raised in the briefing is whether, pursuant to 28 U.S.C. § 1331, Plaintiff's state law claims "aris[e] under" federal law, because they "are dependent on the resolution of substantial questions of federal law." (Cmplt. (Dkt. No. 1) ¶ 13)

This Court concludes that Plaintiff's state law claims do not depend on the resolution of substantial questions of federal law. Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction will be granted.

## DISCUSSION

### I. APPLICABLE LAW

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" Gunn v. Minton, 133 S.Ct. 1059, 1064 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994)). One such jurisdiction-conferring statute – 28 U.S.C. § 1331 – provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331. Statutory "arising under" jurisdiction "is invoked by and large by plaintiffs pleading a cause of action created by federal law." Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 312 (2005).

"[E]ven where a claim finds its origins in state rather than federal law," however, there exists "a 'special and small category' of cases in which arising under jurisdiction still lies." Gunn, 133 S.Ct. at 1065 (quoting Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006)). Federal courts may exercise jurisdiction over state law claims where "it appears that some substantial, disputed question of federal law is a necessary element of one of

5

the well-pleaded state claims." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 13 (1983). "Federal jurisdiction in these circumstances is predicated on 'the presence of a federal issue in a state-created cause of action.'" D'Alessio v. New York Stock Exchange, Inc., 258 F.3d 93, 99 (2d Cir. 2001) (quoting Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 810 (1986)).

However, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow, 478 U.S. at 813. Rather,

> the question is, does a state-law claim [1] necessarily raise a stated federal issue, [2] actually disputed and [3] substantial, which [4] a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

Grable, 545 U.S. at 314. "Where all four of these requirements are met, . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,'" and these advantages "can be vindicated without disrupting Congress's intended division of labor between state and federal courts." Gunn, 133 S.Ct. at 1065 (quoting Grable, 545 U.S. at 313-14). Such cases are "only extremely rare exceptions" to the general rule that a suit arises under the law that creates the cause of action. Id. at 1064.

Under the "substantiality" prong of this test, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim 'necessarily raise[s]' a disputed federal issue." Id. at 1066 (quoting Grable, 545 U.S. at 314) (emphasis and alteration in original). "The substantiality inquiry under Grable looks instead to the importance of the issue to the federal system as a whole." Id. Accordingly, courts have typically found a substantial federal issue only in those exceptional cases that go beyond the application of some federal legal standard to private litigants' state law claims, and instead implicate broad consequences to the federal system or the nation as a whole. See, e.g., Smith v.

6

Kansas City Title & Trust Co., 255 U.S. 180, 201 (1921) (holding that the case arises under federal law because the "decision depends upon the determination" of "the constitutional validity of an act of Congress which is directly drawn in question"); Grable, 545 U.S. at 315 (finding a substantial federal interest in determining the notice requirements imposed on the IRS – a federal agency – by federal law, and in providing "the [Federal] Government . . . a federal forum to vindicate its own administrative action"); Broder v. Cablevision Systems Corp., 418 F.3d 187, 195 (2d Cir. 2005) (federal issue is substantial if it "involves . . . [a] complex federal regulatory scheme"); In re Facebook, Inc., IPO Securities and Derivative Litigation, 922 F. Supp. 2d 475, 482-83 (S.D.N.Y. 2013) (finding a substantial federal interest where "the resolution of Plaintiff's claims concerning NASDAQ's decisions to delay the Facebook IPO . . . implicates the substantial federal question of whether NASDAQ's conduct was consistent with its regulatory responsibilities" "as a national securities exchange," which are imposed by federal law, and where "Plaintiff's claim is . . . a matter of what duties a national securities exchange owes to members of the investing public" at large); cf. Merrell Dow, 478 U.S. at 812 ("We think it would . . . flout, or at least undermine, congressional intent to conclude that the federal courts might . . . exercise federal-question jurisdiction and provide remedies for violations of [a] federal statute solely because the violation of the federal statute is said to [create] a 'rebuttable presumption' or [constitute] a 'proximate cause'" for purposes of a state law tort claim.); Gunn, 133 S.Ct. at 1068 ("There is no doubt that resolution of a patent issue in the context of a state legal malpractice action can be vitally important to the particular parties in the case. But something more, demonstrating that the question is significant to the federal system as a whole, is needed.").

In considering the fourth prong of the Grable analysis, a court must determine whether it may exercise subject matter jurisdiction "without disturbing any congressionally

7

approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314. As part of this analysis, "the absence of a federal private right of action [i]s relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires.'" Id. at 318 (quoting Merrell Dow, 478 U.S. at 810). "[T]he missing cause of action [is seen] not as a missing federal door key, always required, but as a missing welcome mat, required . . . when exercising federal jurisdiction over a state [claim] would . . . attract[] a horde of original filings and removal cases raising other state claims with embedded federal issues." Id.

## II. ANALYSIS

Here, it is undisputed that Plaintiff's state law claims for breach of fiduciary duty, waste of corporate assets, and unjust enrichment are predicated on the allegation that Defendants caused or permitted Avon to violate the FCPA. See Pltf. Br. (Dkt. No. 31) at 8; Def. Br. (Dkt. No. 28) at 9; Cmplt. (Dkt. No. 1) ¶¶ 86, 92, 97. Accordingly, this Court will assume, for purposes of resolving Defendants' motion to dismiss, that the first two prongs of the Grable analysis – that the state law claims (1) raise a federal issue that (2) is actually disputed – are met. See Pltf. Br. (Dkt. No. 31) at 8; Def. Br. (Dkt. No. 28) at 9 ("Plaintiff's allegations fail to satisfy both the third and fourth [Grable] requirements.").

Plaintiff's jurisdiction argument falters, however, at the third step in the Grable analysis. Her claims do not raise a substantial federal issue, because any issue related to the FCPA that is presented by this case lacks the requisite "importance . . . to the federal system as a whole." Gunn, 133 S.Ct. at 1066. As noted above, "it is not enough that the federal issue be significant to the particular parties in the immediate suit," id., and here the significance of the federal issue does not extend beyond the parties to this particular dispute.

8

Although Avon's compliance with the FCPA will be one of the critical issues in this litigation, this case does not implicate the validity of the FCPA or the requirements that the Act imposes. See Smith, 255 U.S. at 201. Moreover, this case does not involve the application of a "complex federal regulatory scheme," such as the "complex reimbursement schemes created by Medicare law," New York City Health and Hosps. Corp. v. WellCare of New York, 769 F. Supp. 2d 250, 257 (S.D.N.Y. 2011), or the web of rate-making laws and regulations applicable to cable television providers. Broder, 418 F.3d at 191-92, 195. The FCPA – as Plaintiff describes it – only "prescribes a 'reasonableness' or prudent person standard for assessing [the] adequacy of issuers' practices." (Pltf. Br. (Dkt. No. 31) at 10) Finally, this case involves, at best, the application of a federal legal standard to private litigants' state law claims. It will not have broad consequences to the federal system or the nation as a whole. See Grable, 545 U.S. at 315; In re Facebook, 922 F. Supp. 2d at 482-83.

The critical issues in this case are primarily factual: whether Avon's employees committed acts that violate the FCPA and, if so, whether Defendants caused or permitted these violations. While "[t]here is no doubt that resolution of [these questions under the FCPA's legal standard] is important to the particular parties in the case[,] . . . something more, demonstrating that the question is significant to the federal system as a whole, is needed." Gunn, 133 S.Ct. at 1068. That "something more" is lacking here.

It is not sufficient – as Plaintiff suggests (Pltf. Br. (Dkt. No. 31) at 10-11) – that in determining whether Defendants' conduct meets FCPA standards, a court may be required to interpret certain provisions of the Act, and may thereby affect the development of the law. The same could be said for every case that involves state law claims invoking a federal standard. Whenever a court applies a given legal standard, that court's opinion could theoretically affect

9

other courts' interpretation of that legal standard. If this were a sufficient basis for "arising under" jurisdiction, the "extremely rare exception[]" discussed in Gunn, 133 S.Ct. at 1064, would swallow up the general rule. "Arising under" jurisdiction would be available in any case premised on state law claims, so long as parties cited a federal statute as providing the legal standard. Such a result is particularly problematic in cases such as this, where Congress has declined to grant a private right of action under the federal statute. See Lamb, 915 F.2d at 1024 ("[N]o private right of action is available under the FCPA."). "[I]f the federal . . . standard [under the FCPA] without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action." Grable, 545 U.S. at 318.

Plaintiff argues, however, that "the body of federal case law interpreting the FCPA is quite small," and that "[u]nder these circumstances . . . the federal interest in affording federal courts every opportunity to issue the first authoritative statements about this important federal law is even more substantial." (Pltf. Br. (Dkt. No. 31) at 9-10) There is no evidence, of course, that any significant novel issue under the FCPA will be raised in this litigation. But even if such a question could be anticipated, "whether a particular claim arises under federal law" does not turn "on the novelty of the federal issue." Merrell Dow, 478 U.S. at 817.

In Merrell Dow, plaintiffs' state law claim presented an issue of first impression: "whether the [federal Food, Drug, and Cosmetics Act] applies to sales [made extraterritorially]." Id. at 816. The Supreme Court explicitly rejected the argument that the novelty of this issue justified the exercise of subject matter jurisdiction:

> We do not believe the question whether a particular claim arises under federal law depends on the novelty of the federal issue. Although it is true that federal jurisdiction cannot be based on a frivolous or insubstantial federal question, the interrelation of federal and state authority and the proper management of the federal judicial system . . . would be ill served by a rule that made the existence of federal-question jurisdiction depend on the district court's case-by-case appraisal

> of the novelty of the federal question asserted as an element of the state [law claim]. The novelty of a[] [federal] issue is not sufficient to give it status as a federal cause of action; nor should it be sufficient to give a state-based [federal] claim status as a jurisdiction-triggering federal question.

Id. at 817 (citation and quotation omitted). Accordingly, assuming arguendo that the FCPA is not commonly the subject of litigation, that fact does not create a substantial federal interest in this case.

Finally, this Court could not exercise subject matter jurisdiction here "without disturbing [the] congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314. While "the absence of a federal private right of action [i]s . . . not dispositive of the 'sensitive judgments about congressional intent' that § 1331 requires," id. at 318 (quoting Merrell Dow, 478 U.S. at 810), Congress's decision not to grant a private right of action is nonetheless "relevant to" this Court's inquiry. Id.

Here, exercising subject matter jurisdiction over Plaintiff's state law claims would be tantamount to recognizing a private right of action under the FCPA. Such an approach would "open the floodgates" to federal court litigation of private disputes raising issues under the FCPA, an outcome directly contrary to Congress's apparent intent. Cf. WellCare of New York, 769 F. Supp. 2d at 258. Whenever a company disclosed an FCPA investigation, it could expect a federal court lawsuit founded on state law claims. Congress intended that federal court litigation under the FCPA would proceed by way of SEC and DOJ enforcement actions, however, and not via private suit. Accordingly, exercising subject matter jurisdiction over Plaintiff's state law claims would violate the "congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314.

11

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss for lack of subject matter jurisdiction is granted. The Clerk of the Court is directed to terminate the motion (Dkt. No. 27) and to close this case.

Dated: New York, New York
       March 14, 2015

SO ORDERED.

*Paul G. Gardephe*
Paul G. Gardephe
United States District Judge